IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MONACO COACH CORPORATION, et al.,[1] | ) | Case No. 09-10750 (KJC) |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related Docket Nos. 15, 33, 52** |

## FINAL ORDER (A) AUTHORIZING USE OF CASH COLLATERAL AND (B) GRANTING ADEQUATE PROTECTION

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession, Monaco Coach Corporation, a Delaware corporation, *et al.* (collectively, the "Debtors"), requesting entry of an order authorizing the Debtors pursuant to sections 363(c), of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rules 4001-2, 4001-3, 9013-1(g) and 9013-1(h), *inter alia*:

(i) to use cash collateral within the meaning of section 363(a) of the Bankruptcy Code relating to the ABL Priority Collateral (defined below) (the "Cash Collateral") of (a) Bank of America, N.A., as agent, lead arranger and book manager ("B of A"), pursuant to that certain Loan and Security Agreement, dated as of November 6, 2008 (the "ABL Agreement"), among,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Monaco Coach Corporation (0244); Signature Motorcoach Resorts, Inc. (8980); Naples Motorcoach Resort, Inc. (1411); Port of the Isles Motorcoach Resort, Inc. (8524); Outdoor Resorts of Las Vegas, Inc. (8478); Outdoor Resorts Motorcoach Country Club, Inc. (1141); Signature Resorts of Michigan, Inc. (4020); La Quinta Motorcoach Resorts, Inc. (9661); R-Vision Holdings L.L.C. (2820); R-Vision, Inc. (3151); R-Vision Motorized, LLC (1985); Bison Manufacturing, LLC (0778) and Roadmaster LLC (5174). The address for each of the Debtors is 91320 Coburg Industrial Way, Coburg, OR 97408, with the exceptions of R-Vision, Inc., R-Vision Motorized, LLC, Bison Manufacturing, LLC and Roadmaster LLC, for which the address is 606 Nelson's Parkway, Wakarusa, IN 465733060; and La Quinta Motorcoach Resorts, Inc., for which the address is 80-501 Ave 48, Indio, CA 92201.

on the one hand, B of A and certain lenders thereto (the "ABL Lenders") and, on the other hand, the Debtors, and (b) Ableco Finance LLC, as collateral agent and administrative agent ("Ableco"), pursuant to that certain Financing Agreement, dated as of November 6, 2008 (the "Term Loan Agreement"), among, on the one hand, the Ableco and certain lenders thereto (the "Term Loan Lenders," and together with the ABL Lenders, the "Secured Lenders") and, on the other hand, the Debtors;

(ii) to grant the Secured Lenders adequate protection, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code;

(iii) seeking a Interim Hearing regarding the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001 (the "Interim Order") authorizing the Debtors' use Cash Collateral in the amounts set forth in and limited by the Budget (as defined below) upon the terms and conditions set forth in this Interim Order pending the Final Hearing (as defined below); and

(iv) requesting that a final hearing (the "Final Hearing") be scheduled by this Court to consider entry of a final order (the "Final Order") authorizing on a final basis, *inter alia*, the use of the Cash Collateral.

The Court, having considered the Motion and the budget attached thereto; and in accordance with Bankruptcy Rule 4001(b)(2) and (b)(3) and the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and notice being given to those parties identified in the Motion; and a hearing to consider interim approval of the Motion having been held on March 10, 2009 (the "Interim Hearing"); and the Court having entered that certain *Interim Order (A) Authorizing Use of Cash Collateral; (B) Granting Adequate Protection; and (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)* [Docket No. 33] (as amended, the "Interim Cash Collateral Order")[2]; and a final hearing to consider approval of the Motion having been scheduled for March 25,

---

[2] The original Interim Order was amended by this Court's *Amended Interim Order (A) Authorizing Use of Cash Collateral; (B) Granting Adequate Protection; and (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)* [Docket No. 52], entered on March 18, 2009.

2

2009 (the "Final Hearing"); and upon the record made by the Debtors at the Interim Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor; and due and sufficient notice for the final approval of the Motion under the circumstances having been given; and the Interim Hearing on the Motion having been held before this Court; and upon the entire record made at the Interim Hearing; and no opposition to the Motion having been filed by any party (although a prospective opposition was filed by one of the lenders in case of a further motion to use cash collateral); and B of A having agreed, as provided in the Interim Order, to an extension of use of Cash Collateral through March 28, 2009; and this Court having found good and sufficient cause appearing therefor;

IT IS HEREBY FOUND THAT:

A. On March 5, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases. The Debtors are continuing the operation of their businesses pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. B of A is believed to assert that, as of March 4, 2009, the Debtors are indebted in the approximate amount of $35,662,000 on account of the financing arrangements described in the ABL Agreement (the "ABL Facility"). B of A asserts that the Debtors' obligations under the ABL Facility are secured by a first priority security interest in accounts receivable, inventory and related general intangibles, and a second priority security interest on real and other personal property of the Debtors, with such priorities more fully described in the Intercreditor Agreement (as defined below) (collectively, the "ABL Collateral").

C. Ableco is believed to assert that, as of March 4, 2009, the Debtors are indebted in the approximate amount of $36,987,000 on account of the financing arrangements described in the Term Loan Agreement (the "Term Loan Facility"). Ableco asserts that the Debtors' obligations under the Term Loan Facility are secured by a second priority security interest in accounts receivable, inventory and related general intangibles, and a first priority security interest in real and other personal property of the Debtors, with such priorities more fully

described in the Intercreditor Agreement (collectively, the "Term Loan Collateral," and collectively with the ABL Collateral, the "Collateral").

D. B of A and Ableco are parties to that certain Intercreditor Agreement dated as of November 6, 2008 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Intercreditor Agreement"). The Intercreditor Agreement governs the respective rights, obligations and priorities of the ABL Lenders and the Term Loan Lenders with respect to their asserted interests in and upon the Collateral. The Intercreditor Agreement, as more fully described therein, specifies that, as between B of A and Ableco, (1) B of A has a first priority security interest in certain of the ABL Collateral (*e.g.*, accounts receivable, inventory and related general intangibles), as well as any and all proceeds of the foregoing (the "ABL Priority Collateral") and a second priority security interest in the other ABL Collateral, as well as any and all proceeds of the foregoing and (2) Ableco has a first priority security interest in certain of the Term Loan Collateral (*e.g.*, real and certain other personal property of the Debtors), as well as any and all proceeds of the foregoing (the "Term Loan Priority Collateral") and a second priority security interest in the other Term Loan Collateral, as well as any and all proceeds of the foregoing.

E. B of A contends that all operating revenues, cash on hand, and proceeds from the sale or other disposition of ABL Priority Collateral constitutes Cash Collateral.

F. The Debtors require the use of Cash Collateral to pay the reasonable and necessary expenses to be incurred in connection with the continued operations of their businesses and the payment of its ongoing administrative expenses in these chapter 11 cases pending the Debtors entering into a superseding, post-petition financing agreement for which they would intend to seek Court approval ("DIP Financing").

G. Notice of the Final Hearing and the relief requested in the Motion has been given to (i) Office of the United States Trustee for the District of Delaware; (ii) thirty largest unsecured creditors in these cases; (iii) counsel to the secured lenders and their legal counsel (if known); (iv) known holders of pre-petition liens asserted against the Debtor's property; (v) the Internal

Revenue Service; (vi) all other parties that have requested notice under Bankruptcy Rule 2002; and (vii) counsel for the official committee of unsecured creditors (the "Committee") appointed in these chapter 11 cases.

H. Based on the record before this Court, B of A, Ableco and the Secured Lenders each have acted in good faith in connection with this Final Order and their reliance on this Final Order is in good faith.

I. Based on the record before this Court, it appears that the terms of this Final Order, including, without limitation, the terms of the use of Cash Collateral, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

J. The Debtors have delivered to B of A and Ableco the detailed budget, a copy of which was attached to the Interim Order (the "Budget"), that sets forth projected cash receipts and cash disbursements (by line item) on a weekly basis for the time period reflected therein. The Budget may be modified or supplemented from time to time by written agreement of B of A, Ableco and the Debtors without the need of further notice, hearing or order of this Court. The consent of B of A or Ableco to any Budget shall not be construed as a commitment to provide DIP Financing hereafter or to permit the use of Cash Collateral after the occurrence of a Termination Event (as defined below) under this Final Order

K. Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, DETERMINED AND DECREED that

1. **Motion Granted.** The Motion is granted on a final basis, on the terms and conditions set forth in this Final Order, and any objections to the Motion are overruled.

2. **Use of the Cash Collateral.** The Debtors are authorized to use the Cash Collateral only to pay, when due, the expenses set forth in the Budget, from the date of entry of the Interim Order through March 28, 2009 (the "Cash Collateral Period") (which shall include deposits to utilities under section 366 of the Bankruptcy Code and anticipated sales taxes, employment taxes and personal property taxes that accrue within the Cash Collateral Period) not to exceed any of the following unless otherwise expressly consented to in writing, including email or other electronic forms thereof, by each of BofA and Ableco: (A) 110% of the total amount of the expenses set forth in the Budget on a cumulative basis through the end of the Cash Collateral Period; (B) the amount of the expenses for each group of line items of expenditures in the Budget designated below ("Buckets") on a cumulative basis through the end of the Cash Collateral Period plus a variance of 15%; and (C) with respect to each of the following categories of expenditures set forth in the Budget on a cumulative basis through the end of the Cash Collateral Period, the amount of the expenses therein plus a variance of the greater of (i) 15% or (ii) $100,000: "Freight & Postage," "Utilities & Telephone", "Sales & Other Taxes" and "Insurance". The three Buckets are: (1) the aggregate of the line items for: (x) Dealer Promos, Spiffs & Shows; (y) Warranty and Out of Warranty Expenses; and (z) Travel Meals & Entertainment; and (2) the aggregate of the line items for: (x) Other Misc. SGA Expenses; and (y) Payroll, 401(k) & Health Benefits; and (3) the amount of $120,000 plus the aggregate of the line items for: (x) Director Fees, Investor & Public Relations; and (y) Professionals.

3. **Adequate Protection.** In consideration of and as adequate protection for any diminution in the value of the ABL Priority Collateral from and after the Petition Date:

   3.1. Each of the Secured Lenders is hereby granted replacement security interests and liens (the "Replacement Liens") in all of the Debtors' post-petition assets, as well as all accessions, additions, products and proceeds thereof, except for causes of

action (collectively, "Avoidance Actions") for preferences, fraudulent conveyances, and other avoidance power claims and any recoveries under sections 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and the proceeds thereof (collectively the "Post-Petition Collateral"), and shall be of the same priority and validity for each type of such collateral as the pre-petition lien of each such Secured Lender under the terms of the Intercreditor Agreement; provided, however, that the Replacements Liens shall be subordinate to the Carve Outs (as defined below). Except for the Carve Outs, the Replacement Liens shall not be 'primed' by any other lien or encumbrance, whether by order of the Court or by the passage of time.

3.2. The Replacement Liens shall be deemed valid and perfected by operation of law immediately upon entry of this Final Order notwithstanding the requirements of non-bankruptcy law with respect to perfection. None of the Debtors, B of A, Ableco, or the Secured Lenders shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Replacement Liens, and although not required of Secured Lenders, the automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified to the extent necessary for Secured Lenders to perfect the Replacement Liens. The Replacement Liens shall be supplemental of, and in addition to, the pre-petition liens and security interests of each of the Secured Lenders. If B of A or Ableco, each in its sole discretion, chooses to obtain consents from any landlord, licensor or other party in

interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens:

 3.2.1.   all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Final Order; and

 3.2.2.   no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

 3.3.   In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, B of A, Ableco, or the Secured Lenders may, each in its sole discretion, choose to file a true and complete copy of this Final Order in any place at which any such instruments would or could be filed, together with a description of the Cash Collateral and/or the Collateral, and such filing by B of A or Ableco shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Final Order.

 3.4.   The Replacement Liens: (i) shall be subject to (x) any non-avoidable, valid, enforceable and perfected liens, security interests and rights that existed, or is deemed to exist, as of the Petition Date in favor of such third parties holding liens or security interests that are superior in priority to the pre-petition liens and security interests of the Secured Lenders, and (y) the Carve Outs; (ii) shall not be subject to section 552(a) of the Bankruptcy Code; and (iii) shall at all times be senior to the rights of the Debtors and any successor trustee or estate representative appointed in these bankruptcy cases or any subsequent cases or proceedings under the Bankruptcy Code.

 3.5.   If and to the extent of any diminution in the value of the Secured Lenders' interest in the ABL Priority Collateral from and after the Petition Date, whether resulting from the Debtors' use of Cash Collateral, the imposition of the automatic stay, or otherwise, then each Secured Lender shall have an allowed claim under section 503(b) of the Bankruptcy Code in the amount of such diminution that shall, pursuant to section

507(b) of the Bankruptcy Code, have priority over all other claims entitled to priority under section 507(a)(1) of the Bankruptcy Code (the "507(b) Superpriority Claim"). Any such claims of the Secured Lenders shall be *pari passu* among all of the Secured Lenders. The 507(b) Superpriority Claim shall be subordinate to the Carve Outs and not payable from the proceeds of Avoidance Actions.

3.6. Irrespective of whether included in the Budget, the Debtors shall not make any payments to the Secured Lenders of principal, interest or other amounts during the Cash Collateral Period, pending further Court approval.

4. Term Loan Priority Collateral.

4.1. Debtors are not seeking by this Motion and are not authorized by this Final Order to use cash collateral (as defined in section 363(a) of the Bankruptcy Code) that is generated by or is the proceeds of Term Loan Priority Collateral or, or including without limitation, the proceeds of the tax refund in the amount of approximately $7.2 million received on March 5, 2009 (the "Tax Refund"), without the consent of Ableco or further order of the Court.

4.2. Upon the receipt of any proceeds of Term Loan Priority Collateral, absent further Court order, the Debtors are authorized and directed to turn over such proceeds (including the Tax Refund) to Ableco for safe keeping, which proceeds shall be held in a segregated account by Ableco, designated for the Debtors as the continued owners thereof, pending further order of the Court. Absent further order of the Court, Ableco shall have no right of setoff and no right to apply any such amounts to obligations owed by the Debtors pursuant to the Term Loan Agreement, and Ableco shall take no other actions to adversely affect the interests of the Debtors in such amounts. If an order is entered (after a hearing on notice to Ableco) authorizing the Debtors' use of any portion of the Tax Refund as cash collateral or surcharging same, Ableco shall remit to the Debtors such amounts as the Debtors may be authorized to use or surcharged on the terms and subject to the conditions (if any) set forth in such order, without the need for a

turnover or similar complaint or proceeding. The rights and interests in the Tax Refund of Ableco and BofA, with the priorities as set forth in the Intercreditor Agreement, shall remain in full force and effect, and shall remain perfected by virtue of this Order.

5. <u>Duration of Final Order</u>. This Final Order shall be in effect through March 28, 2009. Notwithstanding the foregoing, this Final Order and the Debtors' right to use Cash Collateral shall automatically terminate upon: (i) the entry of an order approving DIP Financing, (ii) the appointment of a chapter 11 trustee or examiner for the Debtors, (iii) entry of an order of the Bankruptcy Court converting the Debtors' cases to chapter 7, dismissing Debtors' cases or appointing a trustee, or (iv) a default or non-compliance by the Debtors with respect to any term of this Final Order, unless otherwise expressly waived or agreed by the Secured Lenders or order of the Court (each a "Termination Event").

6. <u>No Waiver of Rights</u>. Except as expressly provided herein, nothing contained in this Final Order nor the performance of any term hereunder shall be deemed an admission of any party hereto, or shall in any way limit or affect any rights or remedies of the Debtors or any Secured Lender.

7. <u>Covenants</u>.

7.1. <u>Reporting</u>. The Debtors shall timely provide the Secured Lenders with all documents and information submitted to or requested by the United States Trustee, and all documents filed by the Debtors with the Court and shall provide B of A and Ableco with the following information:

    a) all information and reporting as required under the ABL Agreement;

    b) on each business day, a certificate calculating the Availability (as defined in the ABL Agreement) for that day, in the same form and fashion as the Borrowing Base Certificate (as defined in the ABL Agreement); and

c) on each Tuesday, a "Budget Variance Report" itemizing Bucket of expenditure line items, each expenditure line item not in a Bucket and the aggregate thereof under the Budget, the variance between the budgeted amount and the actual amount expended under the Budget through the last date of the prior week, together with an explanation of any expenditures in excess of what was budgeted and any "adjustment" items set forth in such Budget Variance Report.

7.2. **Access**. The Debtors shall permit the Secured Lenders, and their representatives, agents, and professionals reasonable access to inspect and review any financial records, the Collateral or any premises occupied by the Debtors.

7.3. **Compliance Covenant**. Debtors shall not sell inventory at less than the Advance Rate without B of A's express prior consent.

7.4. **Further Assurances**. The Debtors shall, from time to time, execute and deliver to the Secured Lenders any statement, assignment, instrument, document, agreement or other document and take any other action that such Secured Lender may reasonably request to implement the provisions of this Final Order or any protection or benefit in favor of the Secured Lenders provided or acknowledged by this Final Order.

8. **Carve Outs**.

8.1. All liens and claims of the Secured Lenders on the ABL Priority Collateral, the Replacement Liens and the 507(b) Superpriority Claim shall be junior in right of priority and subject to the following amounts incurred during the Cash Collateral Period ONLY and without the estates' waivers of any rights with respect to, *inter alia*, such expenses: (a) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 (including, without limitation, fees under 28 U.S.C. § 1930(a)(6) ("U.S. Trustee Fees") incurred during the term of this Final Order; (b) the fees due to the Clerk of the Court ("Clerk's Fees") incurred during the term of this Final Order; (c) the regular employee payroll and commissions' payment due for post-petition services rendered after the

11

period covered by the last paid payroll or commissions' payments (the "Stub Payroll") and (d) the actual unpaid fees and expenses incurred by professionals retained by an order of the Court entered pursuant to sections 327 or 1103(b) of the Bankruptcy Code (the "Professionals"), provided they are incurred during the term of this Final Order, within the aggregate amounts set forth therefor in the Budget, and are subsequently allowed by the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code (the "Professional Expenses"), but only to the extent 100% of all retainers held by such Professionals are applied to any outstanding obligations of the Debtors or estates owed to such Professionals. Notwithstanding anything herein to the contrary, no portion of the Carve-Outs shall include, apply to, or be available for, and the Final Order does not authorize use of Cash Collateral for, any fees or expenses incurred by any party, including the Debtors or Committee, in (i) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the Secured Lenders' assertion, enforcement or realization on the Collateral in accordance with the Loan Documents and this Interim or any Avoidance Actions against the Secured Lenders, or (ii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the B of A, Ableco or any other Secured Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the indebtedness owed to any Secured Lender under or with respect to the ABL Agreement or the Term Loan Agreement, or the Adequate Protection granted herein; provided however, up to the amount of $25,000 shall be permitted to be used by professionals of the Committee to investigate the liens, claims and interests of the Secured Lenders. The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtors, the Secured Lenders, the Committee, the U.S. Trustee or other parties in interest to object to the allowance and payment of such amounts. Payment of any portion of the Carve-Outs shall not, and shall not be deemed

to, reduce any Debtor's obligations owed to any of the Secured Lenders or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the Collateral or (or their respective claims against the Debtors).

      8.2. The Debtors are authorized to pay the Professionals their incurred fees and expenses (subject to the Budget restrictions above and allowance, but whenever allowed) from Cash Collateral as and when authorized by the Court pursuant to any orders approving procedures for interim compensation. During the Cash Collateral Period, on a weekly basis, the Debtors shall transfer sufficient cash to satisfy the U.S. Trustee's Fees, Clerk's Fees, and Professional Expenses actually incurred by such entity or Professional (to the extent such Professional lacks sufficient available retainer to be applied to such obligations) to the Pachulski Stang Ziehl & Jones LLP Client Trust Account (the "Expenses Reserve") to be held in trust by the firm for the benefit of the Professionals, the Clerk of the Court and the U.S. Trustee, to be applied to U.S. Trustee Fees when due, to Clerk's Fees when payable, and to Professional Expenses pursuant to one or more orders of the Court, with any excess to be subject to the Replacement Liens of the Secured Lenders or their successors. Pachulski Stang Ziehl & Jones LLP shall treat the Expenses Reserve with the same degree of care as it treats its own property. If the Debtors' right to use Cash Collateral under this Interim is terminated and the Expenses Reserve does not contain sufficient monies to fund all U.S. Trustee Fees, Clerk's Fees and Professional Expenses provided for under the Budget through the date of termination (the "Shortfall") then (a) to the extent the Debtors have sufficient funds on hand to do so, the Debtors shall transfer Cash Collateral in an amount equal to the Shortfall to the Expenses Reserve notwithstanding the termination of the Debtors' right to use Cash Collateral; or (b) to the extent the Debtors do not have sufficient funds on hand to do so, any Cash Collateral coming into the Debtors' possession after the termination of the Interim shall be transferred to the Expenses Reserve in an amount equal to the Shortfall.

9. <u>Notice</u>. The Debtors shall serve a copy of this Final Order by regular mail on within two business days following the entry of this Final Order upon: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the Secured Lenders; (iv) known holders of pre-petition liens against the Debtors' personal property; (v) the Internal Revenue Service; and (vi) all other parties that have requested notice under Bankruptcy Rule 2002.

IT IS SO ORDERED.

Dated: March 15, 2009

The Honorable Kevin J. Carey
Chief United States Bankruptcy Judge

14