IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MONACO COACH CORPORATION, et al.,[1] | ) | Case No. 09-10750-KJC |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

### ORDER GRANTING MOTION (I) AUTHORIZING THE SALE OF CERTAIN ASSETS RE: MOTORHOME RESORTS AND LA QUINTA, CALIFORNIA, REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(A), (F) AND (M) OF THE BANKRUPTCY CODE;(II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (III) GRANTING RELATED RELIEF, AS TO NAPLES AND BAY HARBOR RESORT PROPERTIES

Upon the motion, dated April 27, 2009 (the "Sale Motion") of the above-captioned

debtors and debtors in possession (the "Debtors") for the entry of an order pursuant to sections

105, 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002,

6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

*inter alia*, (i) authorizing the sale of certain assets related to the Debtors' motorhome resorts and

La Quinta, California, real property, free and clear of all liens, claims, encumbrances, rights of

first refusal or first offer and other interests other than non-delinquent real estate taxes and

assessments and other exceptions permitted therein; (ii) assume and assign certain executory

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Monaco Coach Corporation (0244); Signature Motorcoach Resorts, Inc. (8980); Naples Motorcoach Resort, Inc. (1411); Port of the Isles Motorcoach Resort, Inc. (8524); Outdoor Resorts of Las Vegas, Inc. (8478); Outdoor Resorts Motorcoach Country Club, Inc. (1141); Signature Resorts of Michigan, Inc. (4020); La Quinta Motorcoach Resorts, Inc. (9661); R-Vision Holdings L.L.C. (2820); R-Vision, Inc. (3151); R-Vision Motorized, LLC (1985); Bison Manufacturing, LLC (0778) and Roadmaster LLC (5174). The address for each of the Debtors is 91320 Coburg Industrial Way, Coburg, OR 97408, with the exceptions of R-Vision, Inc., R-Vision Motorized, LLC, Bison Manufacturing, LLC and Roadmaster LLC, for which the address is 606 Nelson's Parkway, Wakarusa, IN 465733060; and La Quinta Motorcoach Resorts, Inc., for which the address is 80-501 Ave 48, Indio, CA 92201.

contracts and unexpired leases; and (iii) granting related relief; and this Court having entered an order on April 20, 2009 (the "Sale Procedures Order" and attached as Exhibit "1" thereto, the "Sale Procedures"), authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction[2] and Sale Procedures to consider higher or otherwise better offers for the Resort Assets, establishing a date for the Auction, and approving, *inter alia*, (i) the Sale Procedures in connection with the Auction; and (ii) the form and manner of notice of the Auction and Sale Hearing; and the Court having established the date of the Sale Hearing; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing and the Auction (incorporated herein by this reference), and all other pleadings and proceedings in these jointly administered cases, including the Sale Motion; and it appearing that the relief requested in the Sale Motion and as set forth in the Purchase and Sale Agreement by and between the Debtors and Morgan Acquisitions, LLC (the "Buyer"), substantially similar to the form attached hereto as **Exhibit "A"**, but as modified as set forth in the record of the Auction and as further documented between the parties prior to the Closing and provided, however, that Buyer shall acquire the Debtors' interests in the Signature Trademark on the terms and conditions set forth in the Asset Purchase Agreement attached to the Sale Motion (the "Asset Purchase Agreement"), is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefor;

---

[2] All capitalized terms used but not defined herein have the meaning ascribed to such terms in the Sale Motion or, if not defined in the Sale Motion, in the Asset Purchase Agreement.

2

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Resort Assets to be sold, transferred or conveyed pursuant to the Asset Purchase Agreement, pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) Bankruptcy Code §§ 102, 105 and 363, and (ii) Bankruptcy Rules 2002, 6004 and 9014.

E.      On March 5, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

57527-002\DOCS_LA:200557.1

F.      As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with Bankruptcy Code §§ 102(1) and 363(b), Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, and in compliance with the Sale Procedures Order. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, the Auction, the Sale Hearing, or of the entry of this Order is necessary or shall be required.

G.      A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (a) the U.S. Trustee; (b) counsel to the official committee of unsecured creditors (the "Committee"); (c) all parties known to be asserting a lien on any of the Resort Assets; (d) all known counterparties to Assumed Executory Contracts potentially subject to being assumed and assigned pursuant to the Sale Motion; (e) all entities known to have expressed an interest in bidding on the Resort Assets in accordance with the Sale Procedures Order; (f) the United States Attorney's office; (g) all state attorney generals in states in which the Debtors do business in connection with the Resort Assets; (h) state taxing authorities in the states in which the Debtors do business in connection with the Resort Assets and the Internal Revenue Service; (i) all other parties that have filed a notice of appearance and demand for service of papers in the Debtors' chapter 11 cases under Bankruptcy Rule 2002 as of the date of filing the Motion; and (j) all known creditors of the Debtors. Other parties interested in bidding on the Resort Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Resort Assets.

4

H.     The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Asset Purchase Agreement and sell the Resort Assets under Bankruptcy Code § 363, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors. Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Resort Assets if the sale is not consummated quickly; (ii) the Successful Bid as described in the Asset Purchase Agreement constitutes the highest or best offer for the Resort Assets; (iii) the Asset Purchase Agreement and the Closing (as defined in the Asset Purchase Agreement) will present the best opportunity to realize the value of the Debtors' Resort Assets and avoid decline and devaluation of the Debtors' business; and (iv) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the Asset Purchase Agreement, creditors' recoveries may be diminished.

I.     The Sale Procedures set forth in the Sale Procedures Order were non-collusive, substantively and procedurally fair to all parties.

J.     The Debtors and their professionals have complied, in good faith, in all respects with the Sale Procedures Order. As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Sale Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as Qualified Bidders and submit their highest or otherwise best offer to purchase some or all of the Debtors' Resort Assets, (ii) provided potential purchasers, upon request, sufficient information to enable them to make an

5

informed judgment on whether to bid on the Resort Assets, and (iii) considered any bids submitted on or before the Bid Deadline.

K.    The Buyer submitted the highest or otherwise best offer, as determined by the Debtors, in consultation with Ableco and the Committee, and the Buyer is the Successful Bidder for the Resort Assets in accordance with the Sale Procedures Order. The Sale Procedures obtained the highest value for the Resort Assets for the Debtors and their estates.

L.    The offer of the Buyer, upon the terms and conditions set forth in the Asset Purchase Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Asset Purchase Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Resort Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

M.    The Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. The Buyer is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code §§ 363(m) and (n) with respect to the Resort Assets acquired. The Asset Purchase Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind. Neither the Debtors nor the Buyer has engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of or implicate Bankruptcy Code § 363(n) to the Asset Purchase Agreement or to the

6

consummation of the sale transaction and transfer of the Resort Assets to the Buyer. The Buyer is entitled to all the protections and immunities of Bankruptcy Code § 363(m).

N.      The Debtors are authorized to execute the Asset Purchase Agreement and all other documents contemplated thereby, and to consummate the transactions contemplated by the Asset Purchase Agreement. No consents or approvals, other than as may be expressly provided for in the Asset Purchase Agreement, are required by the Debtors to consummate such transactions.

O.      The Debtors have advanced sound business reasons for seeking to enter into the Asset Purchase Agreement and to sell and/or assume and sell and assign the Resort Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Resort Assets and to consummate the transactions contemplated by the Asset Purchase Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Resort Assets to the Buyer is a legal, valid and effective transfer of the Resort Assets.

P.      The terms and conditions of the Asset Purchase Agreement, including the consideration to be realized by the Debtors pursuant to the Asset Purchase Agreement, are fair and reasonable, and the transactions contemplated by the Asset Purchase Agreement are in the best interests of the Debtors' estates.

Q.      Except as otherwise provided in the Asset Purchase Agreement, the Resort Assets shall be sold free and clear of any lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal or first offer, easement, servitude, restrictive covenant, encroachment, hypothecation, debt, levy, indenture, proxy, voting trust or agreement, transfer restriction or encumbrance or any other similar restriction of any kind (other

7

than the Permitted Exceptions and except as otherwise provided herein) (collectively, "Interests") with such Interests to attach to the consideration to be received by the Debtors in the same priority, having the same validity (or invalidity) and subject to the same defenses and avoidability, if any, as before the Closing.

      R.     The transfer of the Resort Assets described in the Asset Purchase Agreement to Buyer is a legal, valid and effective transfer of the Resort Assets, and, except as may otherwise be provided in the Asset Purchase Agreement, shall vest Buyer with all right, title and interest of the Debtors to the Resort Assets free and clear of any and all Interests. Except as specifically provided in the Asset Purchase Agreement or this Order, the Buyer shall not assume or become liable for any Interests relating to the Resort Assets being sold by the Debtors.

      S.     The Debtors may sell the Resort Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied. Those holders of Interests (including, to the extent applicable, the non-debtor parties to the Assumed Executory Contracts) who did not object, or who withdrew their objections, to the sale of the Resort Assets and the Sale Motion are deemed to have consented pursuant to Bankruptcy Code § 363(f)(2). All objections to the Sale Motion have been resolved or overruled. Those holders of Interests who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having their Interests, if any, attach to the proceeds of the sale of the Resort Assets ultimately attributable to the property against or in which they claim or may claim any Interests.

8

T.      Not selling the Resort Assets free and clear of all Interests would adversely impact the Debtors' estates, and the sale of Resort Assets other than one free and clear of all Interests would be of substantially less value to the Debtors' estates.

U.      In the absence of a stay pending appeal, the Buyer is acting in good faith, pursuant to Bankruptcy Code § 363(m), in closing the transactions contemplated by the Asset Purchase Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rule 6004(h).

V.      The transactions contemplated under the Asset Purchase Agreement do not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Buyer and the Debtors, there is no common identity between the Debtors and the Buyer, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or their estates, and the Buyer does not constitute a successor to the Debtors or their estates.

W.      The sale of the Resort Assets outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The sale does not constitute a *sub rosa* chapter 11 plan.

X.      The total consideration provided by the Buyer for the Resort Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent

value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Resort Assets.

Y.    Time is of the essence in consummating the sale. In order to maximize the value of the Resort Assets, it is essential that the sale of the Resort Assets occur within the time constraints set forth in the Asset Purchase Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rule 6004.

Z.    Except as expressly provided for by the terms of the Asset Purchase Agreement the Buyer shall have no obligations with respect to any liabilities of the Debtors.

AA.    The relevant Debtors do not have a privacy policy. Therefore, the sale of the Resort Assets may be approved pursuant to Bankruptcy Code § 363(b)(1)(A) without the appointment of a consumer privacy ombudsman as defined in Bankruptcy Code § 363(b)(1).

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The relief requested in the Sale Motion is granted in its entirety with respect to the resort properties located in Naples, Florida, and Bay Harbor, Michigan, described in more detail in **Exhibit "B"** attached hereto (collectively, the "Naples and Bay Harbor Resort Assets"), and the Asset Purchase Agreement entered into with the Buyer as the Successful Bidder for the Naples and Bay Harbor Resort Assets at the Purchase Price of eight million five hundred twenty thousand two hundred eighty-three and 2/100 dollars ($8,520,283.02) for the Naples Resort and two million six hundred twenty-nine thousand seven hundred sixteen and 98/100 dollars ($2,629,716.98) for the Bay Harbor Resort is approved, subject to the terms and conditions

10

contained and referenced herein. The Sale Motion complies with all aspects of Local Rule 6004-1.

2.      All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.      Notice of the Auction and the Sale Hearing was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, and 6004.

*Approval of Sale*

4.      The sale of the Naples and Bay Harbor Resort Assets, the terms and conditions of the Asset Purchase Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

5.      The sale of the Naples and Bay Harbor Resort Assets and the consideration provided by the Buyer under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.      The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under Bankruptcy Code § 363(m).

7.      Pursuant to Bankruptcy Code § 363(m), if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any

11

other court, such reversal, modification, or vacatur shall not affect the validity and enforceability
of any transfer under the Asset Purchase Agreement or obligation or right granted pursuant to the
terms of this Order (unless stayed pending appeal), and notwithstanding any reversal,
modification or vacatur shall be governed in all respects by the original provisions of this Order
and the Asset Purchase Agreement, as the case may be.

8.      The Debtors are hereby authorized to fully assume, perform under, consummate
and implement the terms of the Asset Purchase Agreement together with any and all additional
instruments and documents that may be reasonably necessary or desirable to implement and
effectuate the terms of the Asset Purchase Agreement, this Order and sale of the Naples and Bay
Harbor Resort Assets contemplated thereby including, without limitation, deeds, assignments,
stock powers and other instruments of transfer, and to take all further actions as may reasonably
be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and
conferring to the Buyer or its designee, or reducing to possession any or all of the Naples and
Bay Harbor Resort Assets, as may be necessary or appropriate to the performance of the
Debtors' obligations as contemplated by the Asset Purchase Agreement, without any further
corporate action or orders of this Court.

9.      The Debtors and each other person or entity having duties or responsibilities
under the Asset Purchase Agreement, any agreements related thereto or this Order, including,
without limitation, any title companies or escrow agents, and their respective directors, officers,
employees, members, agents, representatives, and attorneys, are authorized and empowered,
subject to the terms and conditions contained in the Asset Purchase Agreement, to carry out all
of the provisions of the Asset Purchase Agreement and any related agreements; to issue, execute,

12

57527-002\DOCS_LA:200557.1

deliver, file, and record, as appropriate, the documents evidencing and consummating the Asset

Purchase Agreement, and any related agreements; to take any and all actions contemplated by

the Asset Purchase Agreement, any related agreements or this Order; and to issue, execute,

deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures,

mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to

perform such other acts and execute and deliver such other documents, as are consistent with,

and necessary or appropriate to implement, effectuate, and consummate, the Asset Purchase

Agreement, any related agreements and this Order and the transactions contemplated thereby and

hereby, all without further application to, or order of, the Court.

   10. The secretary or any assistant secretary of any of the Debtors shall be, and hereby

is, authorized to certify or attest to any of the foregoing actions (but no such certification or

attestation shall be required to make any such action valid, binding, and enforceable). The

Debtors, or anyone acting at the Debtors' direction in connection with the transaction(s)

described in the Asset Purchase Agreement, including, without limitation, any title company or

escrow agent, are further authorized and empowered to cause to be filed with the secretary of

state of any state, county recorder or other official responsible for the maintenance of land

records, or other applicable officials of any applicable governmental units any and all

certificates, agreements, documents or amendments necessary or appropriate to effectuate the

transactions contemplated by the Asset Purchase Agreement, any related agreements and this

Order, including, without limitation, amended and restated certificates or articles of

incorporation and by-laws or certificates or articles of amendment, and all such other actions,

filings, or recordings as may be required under appropriate provisions of the applicable laws of

13

all applicable governmental units or as any of the officers of the Debtors may determine are

necessary or appropriate. The execution of any such document or the taking of any such action

shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

Without limiting the generality of the foregoing, this Order shall constitute all approvals and

consents, if any, required by the corporation laws of the States of Delaware, Oregon, California,

Florida, Michigan and Nevada, and all other applicable business corporation, trust, and other

laws of the applicable governmental units with respect to the implementation and consummation

of the Asset Purchase Agreement, any related agreements and this Order, and the transactions

contemplated thereby and hereby.

11.    Effective as of the Closing, the sale of the Naples and Bay Harbor Resort Assets

by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Naples and

Bay Harbor Resort Assets notwithstanding any requirement for approval or consent by any

person and vests Buyer with all right, title and interest of the Debtors in and to the Naples and

Bay Harbor Resort Assets, free and clear of all Interests of any kind, pursuant to Bankruptcy

Code § 363(f).

12.    The sale of the Naples and Bay Harbor Resort Assets is not subject to avoidance

pursuant to Bankruptcy Code § 363(n).

*Transfer of Assets*

13.    Except to the extent specifically provided in the Asset Purchase Agreement, upon

the Closing, the Debtors shall be, and hereby are, authorized and empowered, pursuant to

Bankruptcy Code §§ 105, 363(b) and 363(f), to sell the Naples and Bay Harbor Resort Assets to

the Buyer or its designee. The sale of the Naples and Bay Harbor Resort Assets vests Buyer or

14

its designee with all right, title and interest of the Debtors to the Naples and Bay Harbor Resort Assets free and clear of any and all Interests, with all such Interests to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Naples and Bay Harbor Resort Assets, subject to all claims and defenses the Debtors may possess with respect thereto. The Sale Motion or notice thereof shall be deemed to provide sufficient notice as to the sale of the Naples and Bay Harbor Resort Assets free and clear of Interests in accordance with Local Rule 6004-1. Following the Closing Date, no holder of any Interests in the Naples and Bay Harbor Resort Assets may interfere with the Buyer's or its designee's use and enjoyment of the Naples and Bay Harbor Resort Assets based on or related to such Interests, or any actions that the Debtors may take in their chapter 11 cases.

14.     The provisions of this Order authorizing the sale of the Naples and Bay Harbor Resort Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. However, the Debtors and the Buyer, and each of their respective officers, employees and agents, and any third parties, including, without limitation, any title company or escrow agent, are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Buyer deem necessary or appropriate to implement and effectuate the terms of the Asset Purchase Agreement and this Sale Order.

15.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and

15

governmental authorization or approval of the Debtors with respect to the Naples and Bay Harbor Resort Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Buyer as of the Closing Date.

16.     All of the Debtors' interests in the Naples and Bay Harbor Resort Assets to be acquired by the Buyer under the Asset Purchase Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Buyer. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Naples and Bay Harbor Resort Assets acquired by the Buyer under the Asset Purchase Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Naples and Bay Harbor Resort Assets to the Buyer.

17.     Except as expressly provided in or pursuant to the Asset Purchase Agreement, the Buyer is not assuming nor shall it or any affiliate of Buyer be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Naples and Bay Harbor Resort Assets prior to the consummation of the transactions contemplated by the Asset Purchase Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Naples and Bay Harbor Resort Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Asset Purchase Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Buyer or any affiliate of the Buyer.

16

18.      Except as otherwise expressly provided in the Asset Purchase Agreement, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Naples and Bay Harbor Resort Assets are directed to surrender possession of the Naples and Bay Harbor Resort Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

19.      Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, to the extent any of the Naples and Bay Harbor Resort Assets consist of an interest in a consumer credit transaction subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations), and if such interest is purchased under the Asset Purchase Agreement, the Buyer shall remain subject to the claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as the Buyer would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under section 363, as provided for in Bankruptcy Code § 363(o).

*Additional Provisions*

20.      Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and this Order.

21.      Pursuant to Bankruptcy Code § 525, no governmental unit may revoke or suspend any permit or license relating to the operation of the Naples and Bay Harbor Resort Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of this chapter 11 cases or the consummation of the transaction contemplated by the Asset Purchase Agreement.

17

22.    The Buyer has not assumed or is otherwise not obligated for any of the Debtors'

liabilities other than as set forth in the Asset Purchase Agreement, and the Buyer has not

purchased any of the property described in section 1.4 "Excluded Property" of the Asset

Purchase Agreement. Consequently, all persons, governmental units (as defined in Bankruptcy

Code §§ 101(27) and 101(41)) and all holders of Interests based upon or arising out of liabilities

retained by the Debtors are hereby barred from taking any action against the Buyer or the Naples

and Bay Harbor Resort Assets, including asserting any setoff, right of subrogation or recoupment

of any kind, to recover any Interests or on account of any liabilities of the Debtors other than

pursuant to the Asset Purchase Agreement. All persons holding or asserting any Interest in the

Excluded Assets are hereby enjoined from asserting or prosecuting such Interests or cause of

action against the Buyer or the Naples and Bay Harbor Resort Assets for any liability associated

with the Excluded Assets.

23.    The Buyer is not a "successor" to the Debtors or their estates by reason of any

theory of law or equity, and the Buyer shall not assume, nor be deemed to assume, or in any way

be responsible for any liability or obligation of any of the Debtors and/or their estates including,

but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim

against the Debtors or against an insider of the Debtors, or similar liability except as otherwise

expressly provided in the Asset Purchase Agreement, and the Sale Motion or notice thereof

contains sufficient notice of such limitation in accordance with Local Rule 6004-1. Neither the

purchase of the Naples and Bay Harbor Resort Assets by the Buyer or its affiliates, nor the fact

that the Buyer or its affiliates are using any of the Naples and Bay Harbor Resort Assets

previously operated by the Debtors, will cause the Buyer or any of its affiliates to be deemed a

18

successor in any respect to the Debtors' businesses within the meaning of (i) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), (ii) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors, (v) the cessation of the Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (vi) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., (vii) any liabilities, debts or

19

obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Naples and Bay Harbor Resort Assets prior to Closing, and (ix) any litigation.

24.     Except to the extent necessary for Buyer to enforce the Asset Purchase Agreement, pursuant to Bankruptcy Code §§ 105 and 363, all persons and entities, including, but not limited to, the Debtors, the Committee, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, encumbrance or Interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Naples and Bay Harbor Resort Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Naples and Bay Harbor Resort Assets, the operation of the Debtors' businesses prior to the Closing or the transfer of the Naples and Bay Harbor Resort Assets to the Buyer, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, encumbrance or Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the Buyer or any affiliate, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates, financial advisors and representatives (each of the foregoing in its individual capacity), or the Naples and Bay Harbor Resort Assets.  For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or

20

permitted assigns from pursuing claims, if any, against the Buyer and/or its successors and assigns in accordance with the terms of the Asset Purchase Agreement.

25. Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that (a) the Buyer would be subject to as the owner or operator of the Naples and Bay Harbor Resort Assets after the date of entry of this Order or (b) any entity other than the Buyer would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Paragraph shall limit any defenses or protections from liability for response costs at the Naples and Bay Harbor Resort Assets that the Buyer may have under applicable non-bankruptcy law, including as an "innocent landowner" or "bona fide prospective purchaser" under Sections 101(35) or 107(r) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq.

26. Subject to the terms of the Asset Purchase Agreement, the Asset Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Buyer, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Asset Purchase Agreement and any related agreements. The Debtors shall provide Ableco with notice of any non-material modifications to the Asset Purchase Agreement.

27. The failure specifically to include any particular provisions of the Asset Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Buyer that the Asset

21

Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

28.    To the extent any provisions of this Order conflict with the terms and conditions of the Asset Purchase Agreement, this Order shall govern and control.

29.    This Order and Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if these cases are converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, escrow agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Naples and Bay Harbor Resort Assets.

30.    The provisions of this Order are non-severable and mutually dependent.

31.    Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

32.    Notwithstanding Bankruptcy Rules 6004 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Sale

22

Motion or notice thereof shall be deemed to provide sufficient notice of the Debtors' request for relief from stay in accordance with Local Rule 6004-1. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close under the Asset Purchase Agreement at any time, subject to the terms of the Asset Purchase Agreement. The Buyer has acted in "good faith," and, in the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Buyer close under the Asset Purchase Agreement the Buyer shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant to the Asset Purchase Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

33. This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Sale Procedures Order, and the Asset Purchase Agreement in all respects and to decide any disputes concerning this Order and the Asset Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Asset Purchase Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Naples and Bay Harbor Resort Assets and any Assumed Executory Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Interests.

Dated: _May 11_, 2009

_____
The Honorable Kevin J. Carey
Chief United States Bankruptcy Judge

34. An amount of the proceeds attributable to the Naples Resort equal to face amount of liens of Quality Enterprises USA, Inc. plus fees, costs and interest then accrued shall be placed in trust account with Debtors' counsel subject to further proceedings

57527-002\DOCS_LA:200557.1