IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| MONACO COACH CORPORATION, et al.,[1] ) | Case No. 09-10750 (KJC) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | **Related Docket No.: 187** |
| | **Hearing: May 22, 2009, 11:30 a.m.** |

# DEBTORS' OBJECTION TO SAMUEL AND DOREEN AVOLA'S MOTION FOR RELIEF FROM AUTOMATIC STAY OF PROCEEDING

The above-captioned debtors and debtors in possession (the "Debtors") hereby object ("Objection") to the *Motion for Relief from Automatic Stay of Proceeding* [Docket # 187] (the "Motion"), filed by Samuel Avola and Doreen Avola (collectively, the "Avolas").

## Background

1.  On March 5, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). The Debtors are continuing in possession of their property and are operating and managing their businesses as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Monaco Coach Corporation (0244); Signature Motorcoach Resorts, Inc. (8980); Naples Motorcoach Resort, Inc. (1411); Port of the Isles Motorcoach Resort, Inc. (8524); Outdoor Resorts of Las Vegas, Inc. (8478); Outdoor Resorts Motorcoach Country Club, Inc. (1141); Signature Resorts of Michigan, Inc. (4020); La Quinta Motorcoach Resorts, Inc. (9661); R-Vision Holdings L.L.C. (2820); R-Vision, Inc. (3151); R-Vision Motorized, LLC (1985); Bison Manufacturing, LLC (0778) and Roadmaster LLC (5174). The address for each of the Debtors is 91320 Coburg Industrial Way, Coburg, OR 97408, with the exceptions of R-Vision, Inc., R-Vision Motorized, LLC, Bison Manufacturing, LLC and Roadmaster LLC, for which the address is 606 Nelson's Parkway, Wakarusa, IN 465733060; and La Quinta Motorcoach Resorts, Inc., for which the address is 80-501 Ave 48, Indio, CA 92201.

57527-002\DOCS_DE:148258.1

2.   No request has been made for the appointment of a trustee or an examiner in these cases.

3.   The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filings, is set forth in detail in the *Declaration of P. Martin Daley in Support of First Day Motions* (the "Daley Declaration"), previously filed in these cases and incorporated herein by reference.[2]

4.   Since the Petition Date, the Debtors' post-petition operations and costs of administering their bankruptcy estates have been funded through multiple, very short-term cash collateral orders pursuant to specific budgets negotiated among the Debtors, Ableco and B of A (collectively, the "Secured Lenders"). The most recent cash collateral order, the *Final Order Re Second Motion to Use Cash Collateral (A) Authorizing Use of Cash Collateral; and (B) Granting Adequate Protection Pursuant to Bankruptcy Rule 4001(c)* [Docket # 241] (the "Final Cash Collateral Order"), was entered by the Court on May 1, 2009. The Final Cash Collateral Order permits the Debtors' use of cash collateral "through June 2, 2009 (as may be extended thereafter up to June 20, 2009 with the consent of B of A and Ableco)." Final Cash Collateral Order, ¶ H.

5.   On May 12, 2009, the Court entered four orders authorizing the sales of the Debtors' properties related to resort destinations for owners of motorhomes and other recreational vehicles (the "Resort Assets Sales"). Pursuant to the Final Cash Collateral Order, it

---

[2] Capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Daley Declaration or, if not defined therein, the Motion.

is contemplated that the Resort Assets Sales shall close no later than the beginning of June 2009, unless the time frame for one or more closings is extended.

6. On the same date as the hearing regarding the Motion, the Court will consider the Debtors' motion to authorize the sale of certain of the Debtors' core recreational vehicle manufacturing assets to Workhorse International Holding Company (with Navistar, Inc., as guarantor), or such bidder(s) submitting one or more higher and better offers (the "Major Asset Sale"). Pursuant to the Final Cash Collateral Order, it is anticipated that the Major Asset Sale shall close within a similar time frame as the Resort Asset Sales, unless extended.

7. It is uncertain whether the aggregate net proceeds of the Resort Asset Sales and the Major Asset Sale will be sufficient to satisfy in full the claims of the Secured Lenders. Accordingly, the existence and extent of recoveries to creditors is unknown.

### Objection

8. Pursuant to the Motion, the Avolas seek to compel the Debtors to expend resources of their bankruptcy estates to defend litigation (the "Florida Warranty Litigation") in the United States District Court for the Middle District of Florida (the "Florida District Court"), stayed pursuant to both the automatic stay and the Florida District Court's order of April 2, 2009 (attached to the Motion as Exhibit "A"). On April 20, 2009, the Avolas filed a proof of claim [Claim # 201] in this Court in the amount of $300,000 on account of liabilities asserted in the Florida Warranty Litigation.

9. The Avolas have failed to demonstrate "cause" sufficient to warrant the tremendous burden to the estates that would be caused by the Debtors' compelled

participation in the Florida Warranty Litigation and potentially other, numerous, similar proceedings if this Motion were granted and spawned dozens of "copycat" motions brought by other warranty claimants. Also, at this early stage – as of the filing of this Objection, a mere 71 days after the Petition Date – the disposition of the Debtors' cases is uncertain. Accordingly, it would be premature and wasteful to expend resources now in addressing the Avolas' alleged claims against the estate.

**A.    Legal Standard**

10.    The automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code. *See Midatlantic Nat. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 503 (1986). In particular, the United States Court of Appeals for the Third Circuit has held that the purpose of the automatic stay is to:

> prevent certain creditors from granting a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to the legal cost in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or administration of the debtor.

*Borman v. Raymark Industries, Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991); *See also In re Rexene Products*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

11.    Pursuant to section 362(d)(1) of the Bankruptcy Code, a moving party must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the Movants." *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993). In

particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

> (a.) the prejudice that would be suffered by the debtors should the stay be lifted;
>
> (b.) the balance of the hardships facing the parties if the stay is lifted; and
>
> (c.) the probable success on the merits if the stay is lifted.

*Continental*, 152 B.R. at 424; *Rexene*, 141 B.R. at 557.

**B.     The Estates Would Suffer Extreme Prejudice if the Stay is Lifted**

12.     The most important factor in determining whether to grant relief from the automatic stay to allow litigation to proceed against a debtor is the effect on the administration of the estate. *See In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984); *In re Penn-Dixie Industries, Inc.*, 6 B.R. 832, 836 (Bankr. S.D. N.Y. 1980).

13.     If the Motion were granted, the administration of the Debtors' estates would be adversely affected and the estates would suffer tremendous prejudice. First, as noted above, the Debtors' post-petition operations and professional expenses are funded pursuant to specific budgets negotiated with the Secured Lenders. No expenses have been budgeted to fund the Debtors' participation in litigation in Florida or any other warranty litigation. Second, to the best of the Debtors' knowledge, no insurance coverage is available with respect to the claims asserted in the Florida Warranty Litigation. Third, the granting of the Motion could spawn numerous similar motions by other warranty claimants throughout the United States and Canada, seeking to force the Debtors to litigate such claims on a piecemeal basis in a variety of courts over a broad geographical area – precisely the undesirable and costly result the bankruptcy

57527-002\DOCS_DE:148258.1

claims process is designed to circumvent. Accordingly, there is no reason to distract the Debtors' management – whose attention should be focused on closing the Resort Asset Sales and Major Asset Sale and transitioning certain aspects of the Debtors' business to the buyers – and compel their participation in the liquidation of a general unsecured claim through the Florida Warranty Litigation.

C.    **The Balance of the Hardships Overwhelmingly Favors Denial of the Motion**

14.    Putative unsecured creditors, such as the Avolas, "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief." *In re Micro Design, Inc.*, 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it was appropriate for movants to pursue its claim by filing a proof of claim and participating in the claim process in the bankruptcy case). The Avolas have failed to do so here.

15.    The Avolas complain that the alleged hardships to them favor granting the Motion because, if forced to litigate their claim in Delaware, "their chosen counsel is not situated in that state." Motion, p. 7. To the contrary, the Avolas have already consented to the jurisdiction of this Court and invoked the bankruptcy claims process by filing a proof of claim on April 20, 2009 [Claim # 201]. Moreover, so long as the Avolas' counsel associates local counsel as required by Local Rule 9010-1(c), counsel may participate easily in proceedings in this Court like numerous out-of-state litigants, the presence of which is particularly common before this Court, whose cases draw participants from around the country. As such, any asserted "hardship"

to the Avolas is no different from the procedural requirements faced by numerous other parties before this Court.

16. For the Debtors, however, granting the Motion would open a veritable Pandora's Box of problems. First, there are no amounts budgeted by the Secured Lenders or insurance to fund the Debtors' participation in the Florida Warranty Litigation. The Avolas allege that continuation of the litigation will entail "depositions" and involve "technical products and engineering" issues, potentially requiring significant expenditures by the Debtors for expert fees and other costs. Motion, p. 6. Second, as already noted above, the granting of the Motion would open the door for hundreds of other warranty claimants to seek similar relief and compel the Debtors to litigate various warranty claims in different forums throughout the United States and Canada. The substantial hardships imposed by piecemeal claims litigation are precisely what the bankruptcy claims process is intended to avoid. Third, the Debtors – who are administering these chapter 11 cases with a "skeleton" staff – must focus on the closings of the Resort Assets Sales and Major Asset Sale transactions and the transitioning of the Debtors' businesses to the buyers. Forced participation in geographically distant litigation hardly supports these efforts. Finally, compelling the Debtors' participation in the Florida Warranty Litigation now seems premature given the early stage of the Debtors' bankruptcy cases.

57527-002\DOCS_DE:148258.1

**D.    The Avolas Have Failed to Demonstrate Any Likelihood of Success on the Merits**

17.    A mere assertion of a cause of action does not demonstrate a likelihood of success on the merits. *See In re Daly & Sinnott Law Ctr. PLLC*, 292 B.R. 796, 801-802 (Bankr. D. Vt. 2003) (sufficient evidence, as opposed to allegations, required to show likelihood of success on the merits). Although they hint that "substantial evidence exists" to support their claims, the Avolas provide no evidence whatsoever in support of the Motion sufficient to support a finding that they are likely to succeed on the merits of the Florida Warranty Litigation.

*[Remainder of Page Intentionally Left Blank]*

57527-002\DOCS_DE:148258.1

WHEREFORE, the Debtors respectfully request that (i) the Motion should be denied; and (ii) the Debtors be granted such other and further relief as is appropriate under the circumstances.

Dated: May 15, 2009

PACHULSKI STANG ZIEHL & JONES LLP

/s/ [signature]

Laura Davis Jones (DE Bar No. 2436)
Robert B. Orgel (CA Bar No. 101875)
Malhar S. Pagay (CA Bar No. 189289)
Victoria A. Newmark (CA Bar No. 183581)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
email:    ljones@pszjlaw.com
          rorgel@pszjlaw.com
          mpagay@pszjlaw.com
          vnewmark@pszjlaw.com
          tcairns@pszjlaw.com

Counsel for Debtors and Debtors in Possession

57527-002\DOCS_DE:148258.1