IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MONACO COACH CORPORATION, et al.,[1] | ) Case No. 09-10750-KJC |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Related Docket No. 180** |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (IV) AUTHORIZING THE REJECTION OF CERTAIN CONTRACTS, (V) AUTHORIZING CERTAIN DEBTORS TO CHANGE THEIR NAMES POST-CLOSING AND (IV) GRANTING RELATED RELIEF**

Upon the motion, dated April 24, 2009 (the "Sale Motion"), of the above-captioned

debtors and debtors-in-possession (the "Debtors") for the entry of an order pursuant to sections

105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002,

6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

*inter alia*, (i) authorizing the sale of substantially all of the Debtors' assets related to the Debtors'

motorhome, towable recreational vehicle, and chassis manufacturing business free and clear of

all liens, claims, encumbrances and interests; (ii) approving that certain asset purchase

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Monaco Coach Corporation (0244); Signature Motorcoach Resorts, Inc. (8980); Naples Motorcoach Resort, Inc. (1411); Port of the Isles Motorcoach Resort, Inc. (8524); Outdoor Resorts of Las Vegas, Inc. (8478); Outdoor Resorts Motorcoach Country Club, Inc. (1141); Signature Resorts of Michigan, Inc. (4020); La Quinta Motorcoach Resorts, Inc. (9661); R-Vision Holdings L.L.C. (2820); R-Vision, Inc. (3151); R-Vision Motorized, LLC (1985); Bison Manufacturing, LLC (0778) and Roadmaster LLC (5174). The address for each of the Debtors is 91320 Coburg Industrial Way, Coburg, OR 97408, with the exceptions of R-Vision, Inc., R-Vision Motorized, LLC, Bison Manufacturing, LLC and Roadmaster LLC, for which the address is 606 Nelson's Parkway, Wakarusa, IN 465733060; and La Quinta Motorcoach Resorts, Inc., for which the address is 80-501 Ave 48, Indio, CA 92201.

agreement, dated as of April 23, 2009, between Workhorse International Holding Company ("Purchaser") and Navistar, Inc., as Guarantor, and Debtors Monaco Coach Corporation, Inc.; R-Vision Holdings L.L.C.; R-Vision, Inc.; R-Vision Motorized, LLC; Bison Manufacturing, LLC; and Roadmaster LLC ("Sellers") (the "Agreement," attached as Exhibit A to the Sale Motion); (iii) authorizing the assumption and assignment certain executory contracts and unexpired leases to the Purchaser; (iv) authorizing the rejection of certain contracts; (v) authorizing certain Debtors to change their names post-closing; and (vi) granting related relief; and this Court having entered an order dated May 1, 2009 (the "Bid Procedures Order" and attached as Exhibit 1 thereto, the "Bid Procedures"), authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction[2] and Bid Procedures to consider higher and better offers for the Acquired Assets, establishing a date for the Auction, and approving, *inter alia*, (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction, Sale Hearing and the Cure Notice; (iii) procedures relating to the assumption and assignment of certain unexpired leases and executory contracts, including notice of proposed cure amounts; and (iv) the Expense Reimbursement and Breakup Fee; and the Court having established the date of the Sale Hearing; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Sale Motion, the relief requested therein and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that the relief requested in

---

[2] All capitalized terms used but not defined herein have the meaning ascribed to such terms in the Sale Motion or, if not defined in the Sale Motion, in the Agreement.

the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Acquired Assets to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) Bankruptcy Code §§ 102, 105, 363 and 365, and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

E.     On March 5, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

have continued in possession and management of their businesses and properties as

debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

F.     As evidenced by the affidavits of services and publication filed with the Court,

proper, timely, adequate and sufficient notice of the Sale Motion, the Auction and the Sale

Hearing have been provided in accordance with Bankruptcy Code §§ 102(1) and 363(b),

Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Court, the

procedural due process requirements of the United States Constitution, and in compliance with

the Bid Procedures Order.  Notice of the Sale Hearing was also published in the National Edition

of the New York Times.  The Debtors also gave due and proper notice of the assumption, sale

and assignment of each contract proposed to be assumed and assigned pursuant to the Agreement

(the "Assumed Executory Contracts") through the Cure Notices given in accordance with the Bid

Procedures Order to each non-debtor party under each such Assumed Executory Contract.  Such

notice was good and sufficient and appropriate under the particular circumstances.  No other or

further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment

of the Assumed Executory Contracts or of the entry of this Order is necessary or shall be

required.

G.     A reasonable opportunity to object or be heard regarding the requested relief has

been afforded to all interested persons and entities, including, without limitation, (a) the U.S.

Trustee; (b) counsel to the official committee of unsecured creditors (the "Committee"); (c) all

parties known to be asserting a lien on any of the Debtors' assets and who would appear as

potentially holding a lien on any search conducted to determine who asserts a lien on Sellers'

4

assets; (d) all known counterparties to Assumed Executory Contracts; (e) all entities known to

have expressed an interest in bidding on the Acquired Assets in accordance with the Bid

Procedures Order; (f) the United States Attorney's office; (g) all state attorney generals in states

in which the Debtors do business; (h) state taxing authorities in the states in which the Debtors

do business and the Internal Revenue Service; (i) environmental authorities in the states or

smaller applicable jurisdictions in which the Debtors do business; (j) Monaco Dealers; (k) parties

who are known to have purchased the Sellers' products within the four (4) years prior to the

commencement of the Chapter 11 Cases; (l) the Purchaser and its counsel; (m) all other parties

that have filed a notice of appearance and demand for service of papers in the Debtors' chapter

11 case under Bankruptcy Rule 2002 as of the date of filing the Motion; and (n) all known

creditors of the Debtors.  Other parties interested in bidding on the Acquired Assets were

provided, upon request, sufficient information to make an informed judgment on whether to bid

on the Acquired Assets.

      H.    The Debtors have demonstrated a sufficient basis and compelling circumstances

requiring them to enter into the Agreement, sell the Acquired Assets and assume and assign the

Assumed Executory Contracts under Bankruptcy Code §§ 363 and 365, and such actions are

appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors,

their estates and their creditors.  Such business reasons include, but are not limited to, the facts

that (i) the Agreement and the Closing (as defined in the Agreement) will present the best

opportunity to realize the value of the Debtors on a going concern basis; (ii) there is substantial

5

risk of deterioration of the value of the Acquired Assets if the sale is not consummated quickly; and (iii) the Agreement constitutes the highest and best offer for the Acquired Assets.

I.      The Bid Procedures set forth in the Bid Procedures Order were non-collusive, substantively and procedurally fair to all parties and were the result of good faith, arm's-length negotiations between the Debtors and the Purchaser.

J.      The Debtors and their professionals have complied, in good faith, in all respects with the Bid Procedures Order.  As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bid Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest and best offer to purchase all of the Debtors' assets, (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets, and (iii) considered any bids submitted on or before the Bid Deadline.

K.      The Purchaser submitted the highest and best offer and the Purchaser is the Successful Bidder for the Acquired Assets in accordance with the Bid Procedures Order.  The Bid Procedures obtained the highest value for the Acquired Assets for the Debtors and their estates.

L.      The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and

reasonable; (iii) is in the best interests of the Debtors' creditors and estates; and (iv) constitutes

full and adequate consideration and reasonably equivalent value for the Acquired Assets.

M. The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are

defined in the Bankruptcy Code. The Purchaser is a buyer in good faith, as that term is used in

the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of

Bankruptcy Code §§ 363(m) and (n) with respect to all of the Acquired Assets. The Agreement

was negotiated and entered into in good faith, based upon arm's-length bargaining, and without

collusion or fraud of any kind. Neither the Debtors nor the Purchaser has engaged in any

conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the

application of or implicate Bankruptcy Code § 363(n) to the Agreement or to the consummation

of the sale transaction and transfer of the Acquired Assets and the Assumed Executory Contracts

to the Purchaser. The Purchaser is entitled to all the protections and immunities of Bankruptcy

Code § 363(m).

N. The Debtors are authorized to execute the Agreement and all other documents

contemplated thereby, and to consummate the transactions contemplated by the Agreement. No

consents or approvals, other than as may be expressly provided for in the Agreement, are

required by the Debtors to consummate such transactions.

O. The Debtors have advanced sound business reasons for seeking to enter into the

Agreement and to sell and/or assume and sell and assign the Acquired Assets, as more fully set

forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise

of the Debtors' business judgment to sell the Acquired Assets and to consummate the

transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Acquired Assets to the Purchaser and the assumption and assignment of the Assumed Executory Contracts is a legal, valid and effective transfer of the Acquired Assets and any Assumed Executory Contracts.

P.    The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

Q.    Except as otherwise provided in the Agreement, the Acquired Assets shall be sold free and clear of any lien (statutory or otherwise), hypothecation, encumbrance, security interest, mortgage, pledge, restriction, charge, instrument, license, preference, priority, security agreement, easement, covenant, encroachment, option or other interest in the subject property, including any right of recovery, Tax (including foreign, federal, state and local Tax), Order of any Governmental Authority or other Claim thereagainst or therein, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claims based on any theory that Purchaser is a successor, transferee or continuation of the Sellers or the Business and (iv) any leasehold interest, license or other right, in favor of a person other than Purchaser, to use any portion of the Acquired Assets), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown (collectively, "Liens") (other than the Permitted

Liens) with such Liens (other than the Permitted Liens) to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing.

R.     The transfer of the Acquired Assets to Purchaser is a legal, valid and effective transfer of the Acquired Assets, and, except as may otherwise be provided in the Agreement, shall vest Purchaser with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Liens (other than the Permitted Liens). Except as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Liens (other than the Permitted Liens) relating to the Acquired Assets being sold by the Debtors.

S.     The Debtors may sell the Acquired Assets free and clear of all Liens of any kind or nature whatsoever (other than the Permitted Liens) because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied. Those holders of Liens from which the Acquired Assets are to be sold free and clear (including to the extent if any applicable the non-debtor parties to the Assumed Executory Contracts) who did not object, or who withdrew their objections, to the sale of the Acquired Assets and the Sale Motion are deemed to have consented pursuant to Bankruptcy Code § 363(f)(2). All objections to the Sale Motion have been resolved or overruled. Those holders of Liens (other than the Permitted Liens) who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having their Liens, if any, attach to the proceeds of the sale of the Acquired Assets ultimately attributable to the property against or in which they claim or may claim any Liens.

9

T.    Not selling the Acquired Assets free and clear of all Liens (other than the Permitted Liens) would adversely impact the Debtors' estates, and the sale of Acquired Assets other than one free and clear of all Liens (other than the Permitted Liens) would be of substantially less value to the Debtors' estates.

U.    The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of Bankruptcy Code § 365, including Bankruptcy Code §§ 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Assumed Executory Contracts. The Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Executory Contracts pursuant to Bankruptcy Code § 365(b)(1)(C). The Purchaser shall not be required to provide any further evidence of any adequate assurance to any counterparty of an Assumed Executory Contract. The assumption and assignment of the Assumed Executory Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

V.    The Assumed Executory Contracts are assignable notwithstanding any provisions contained therein to the contrary, or providing for the termination thereof upon assignment or the insolvency or commencement of the Chapter 11 Cases. The Purchaser, on behalf of the Debtors, has provided for the cures and/or other payments or actions required to for the Debtors to assume and assign the Assumed Executory Contracts to the Purchaser. The Purchaser has provided adequate assurance of its future performance under the Assumed Executory Contracts.

W.      In the absence of a stay pending appeal, the Purchaser is acting in good faith,

pursuant to Bankruptcy Code § 363(m), in closing the transactions contemplated by the

Agreement at any time on or after the entry of this Order and cause has been shown as to why

this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

X.      The transactions contemplated under the Agreement do not amount to a

consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors'

estates, there is not substantial continuity between the Purchaser and the Debtors, there is no

common identity between the Debtors and the Purchaser, there is no continuity of enterprise

between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors

or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates.

Y.      The sale of the Acquired Assets outside of a plan of reorganization pursuant to the

Agreement neither impermissibly restructures the rights of the Debtors' creditors nor

impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The sale

does not constitute a *sub rosa* chapter 11 plan.

Z.      The total consideration provided by the Purchaser for the Acquired Assets is the

highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably

equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair

consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent

value, fair consideration and fair value under any other applicable laws of the United States, any

state, territory or possession, or the District of Columbia, for the Acquired Assets.

11

AA.    Time is of the essence in consummating the sale.  In order to maximize the value of the Acquired Assets and preserve the viability of the business as a going concern, it is essential that the sale of the Acquired Assets occur within the time constraints set forth in the Agreement.  Accordingly, there is cause to determine inapplicable the stays contemplated by Bankruptcy Rules 6004 and 6006.

BB.    Other than the Assumed Obligations, and except as expressly provided for by the terms of the Agreement the Purchaser shall have no obligations with respect to any Unassumed Liabilities, shall acquire the Acquired Assets free and clear of the Unassumed Liabilities to the extent they constitute a Lien and are released by the Debtors with respect to such Unassumed Liabilities.

CC.    The Debtors, in connection with offering products or services, did not disclose any policy prohibiting the transfer of personally identifiable information and, therefore, the sale of the Acquired Assets may be approved pursuant to Bankruptcy Code § 363(b)(1)(A) without the appointment of a consumer privacy ombudsman as defined in Bankruptcy Code § 363(b)(1).

DD.    The rejection of the Rejected Contracts pursuant to the terms of this Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

57527-002\DOCS_DE:148520.3

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY

ORDERED, ADJUDGED AND DECREED THAT:

1.      The relief requested in the Sale Motion is granted in its entirety, subject to the

terms and conditions contained herein.  The Sale Motion complies with all aspects of Local Rule

6004-1.

2.      All objections, responses and requests for continuance concerning the Sale

Motion are resolved in accordance with the terms of this Order and as set forth in the record of

the Sale Hearing.  To the extent any such objection, response or request for continuance was not

otherwise withdrawn, waived or settled, it, and all reservations of rights contained therein, is

overruled and denied.

3.      Notice of the Sale Hearing was fair and equitable under the circumstances and

complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006.

*Approval of Sale*

4.      The sale of the Acquired Assets, the terms and conditions of the Agreement

(including all schedules and exhibits affixed thereto), and the transactions contemplated thereby

be, and hereby are, authorized and approved in all respects.

5.      The sale of the Acquired Assets and the consideration provided by the Purchaser

under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a

transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and

any other applicable law.

13

6.      The Purchaser is hereby granted and is entitled to all of the protections provided
to a good faith buyer under Bankruptcy Code § 363(m), including with respect to the transfer of
the Assumed Executory Contracts as part of the sale of the Acquired Assets pursuant to
Bankruptcy Code § 365 and this Order.

7.      Pursuant to Bankruptcy Code § 363(m), if any or all of the provisions of this
Order are hereafter reversed, modified or vacated by a subsequent order of this Court or any
other court, such reversal, modification or vacatur shall not affect the validity and enforceability
of any transfer under the Agreement or obligation or right granted pursuant to the terms of this
Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur
shall be governed in all respects by the original provisions of this Order and the Agreement, as
the case may be.

8.      The Debtors are hereby authorized to fully assume, perform under, consummate
and implement the terms of the Agreement, including the changing of their corporate names,
together with any and all additional instruments and documents that may be reasonably
necessary or desirable to implement and effectuate the terms of the Agreement, this Order and
sale of the Acquired Assets contemplated thereby, including, without limitation, deeds,
assignments, stock powers and other instruments of transfer, and to take all further actions as
may reasonably be requested by the Purchaser for the purpose of assigning, transferring,
granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the
Acquired Assets or Assumed Obligations, as may be necessary or appropriate to the performance
of the Debtors' obligations as contemplated by the Agreement, without any further corporate

action or orders of this Court. The Purchaser shall have no obligation to proceed with the

Closing of the Agreement until all conditions precedent to its obligations to do so have been met,

satisfied or waived.

9.      The Debtors and each other person or entity having duties or responsibilities

under the Agreement, any agreements related thereto or this Order, and their respective directors,

officers, employees, members, agents, representatives and attorneys, are authorized, empowered

and directed, subject to the terms and conditions contained in the Agreement, to carry out all of

the provisions of the Agreement and any related agreements; to issue, execute, deliver, file and

record, as appropriate, the documents evidencing and consummating the Agreement, and any

related agreements; to take any and all actions contemplated by the Agreement, any related

agreements or this Order; and to issue, execute, deliver, file and record, as appropriate, such

other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments,

leases or other agreements or documents and to perform such other acts and execute and deliver

such other documents, as are consistent with, and necessary or appropriate to implement,

effectuate and consummate, the Agreement, any related agreements and this Order and the

transactions contemplated thereby and hereby, all without further application to, or order of, the

Court.

10.     The secretary or any assistant secretary of the Debtors shall be, and hereby is,

authorized to certify or attest to any of the foregoing actions (but no such certification or

attestation shall be required to make any such action valid, binding and enforceable).  The

Debtors are further authorized and empowered to cause to be filed with the secretary of state of

any state or other applicable officials of any applicable governmental units any and all certificates, agreements or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Delaware, the State of Oregon, the State of Indiana and all other applicable business corporation, trust and other laws of the applicable governmental units, including for the change of the Debtors' corporate names, with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

11.    Effective as of the Closing, (a) the sale of the Acquired Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Acquired Assets notwithstanding any requirement for approval or consent by any person and vests Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Liens of any kind (other than the Permitted Liens), pursuant to Bankruptcy Code § 363(f), and (b) the assumption of any Assumed Obligations by the Purchaser constitutes a legal, valid and effective

57527-002\DOCS_DE:148520.3

delegation of any Assumed Obligations to the Purchaser and divests the Debtors of all liability with respect to any Assumed Obligations.

12.     The sale of the Acquired Assets is not subject to avoidance pursuant to Bankruptcy Code § 363(n).

*Transfer of Acquired Assets*

13.     Except to the extent specifically provided in the Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered and directed, pursuant to Bankruptcy Code §§ 105, 363(b) and 363(f), to sell the Acquired Assets to the Purchaser. The sale of the Acquired Assets vests Purchaser with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Liens (other than the Permitted Liens), with all such Liens (other than the Permitted Liens) to attach only to the proceeds of the sale with the same priority, validity, force and effect, if any, as they now have in or against the Acquired Assets, subject to all claims and defenses the Debtors may possess with respect thereto. The Sale Motion or notice thereof shall be deemed to provide sufficient notice as to the sale of the Acquired Assets free and clear of Liens. Following the Closing Date, no holder of any Liens (other than the Permitted Liens) in the Acquired Assets shall have any basis to interfere with the Purchaser's use and enjoyment of the Acquired Assets based on or related to such Liens, or any actions that the Debtors may take in their chapter 11 cases and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

14. The provisions of this Order authorizing the sale of the Acquired Assets free and clear of Liens, other than the Permitted Liens and the Assumed Obligations, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order. However, the Debtors and the Purchaser, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Sale Order.

15. To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

16. All of the Debtors' interests in the Acquired Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets acquired by the Purchaser under the

18

Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Acquired Assets to the Purchaser.

17.     Except as expressly provided in or pursuant to the Agreement, the Purchaser is not assuming and is not deemed to assume, and the Purchaser shall not be, nor shall any affiliate of Purchaser be, in any way liable for or responsible for, as a successor or otherwise, for any liabilities, debts or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Acquired Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Acquired Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any of its affiliates.

18.     Notwithstanding anything to the contrary in this Order or the Agreement, to the extent any of the Acquired Assets consist of an interest in a consumer credit transaction subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations), and if such interest is purchased under the Agreement, the Purchaser shall remain subject to the claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as the Purchaser would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under section 363, as provided for in Bankruptcy Code § 363(o).

*Assumed Executory Contracts*

19

19.      Subject to the terms of the Agreement and the occurrence of the Closing Date, the

assumption by the Debtors of the Assumed Executory Contracts and the assignment of such

agreements to the Purchaser, as provided for or contemplated by the Agreement, be, and hereby

is, authorized and approved pursuant to Bankruptcy Code §§ 363 and 365.

20.      The Assumed Executory Contracts shall be deemed valid and binding and in full

force and effect and assumed by the Debtors and assigned to the Purchaser at the Closing,

pursuant to Bankruptcy Code §§ 363 and 365, subject only to the making of all Cure Payments

required to assume and assign the Assumed Executory Contracts to the Purchaser, and with

non-debtor parties to such Assumed Executory Contracts being without basis to assert against

Purchaser, among other things, defaults, breaches or claims of pecuniary losses existing as of the

Closing or by reason of the Closing.

21.      Upon the Closing, in accordance with Bankruptcy Code §§ 363 and 365, the

Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed

Executory Contract.  The Debtors shall cooperate with, and take all actions reasonably requested

by, the Purchaser to effectuate the foregoing.

22.      Pursuant to Bankruptcy Code §§ 365(b)(l)(A) and (B), and except as otherwise

provided in this Order, the Purchaser, on behalf of the Debtors, shall promptly pay or cause to be

paid to the parties to any Assumed Executory Contracts the requisite cure amounts, if any, set

forth in the Cure Notice served by the Debtors on each of the parties to the Assumed Executory

Contracts (the "Cure Amounts"), with respect to the assumption and assignment thereof.  Certain

Cure Amounts are to be paid by the Debtors as set forth in the Agreement.  The Cure Amounts

are hereby fixed at the amounts set forth in the Cure Notice served by the Debtors, or the amounts determined on the record of the Sale Hearing, as the case may be, and the non-debtor parties to the Assumed Executory Contracts are forever bound by such Cure Amounts and are hereby enjoined from taking any action against the Purchaser or the Acquired Assets with respect to any claim for cure under any Assumed Executory Contract.

23. All defaults or other obligations under the Assumed Executory Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code § 365(b)(2)) shall be deemed cured by payment of the Cure Amounts and the non-debtor parties to such contracts shall be forever barred and estopped from asserting or claiming against the Debtors or Purchaser that any additional amounts are due or other defaults exist.

24. Any provision in any Assumed Executory Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assumed Executory Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Amount, if any. No sections or provisions of any Assumed Executory Contract that purports to provide for additional payments, penalties, charges or other financial accommodations in favor of the non-debtor third party to the Assumed Executory Contracts shall have any force and effect with respect to the transactions contemplated by the Agreement and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code § 365(f) and/or are otherwise unenforceable under Bankruptcy Code § 365(e) and no assignment of any Assumed

21

Executory Contract pursuant to the terms of the Agreement in any respect constitutes a default under any Assumed Executory Contract. In the absence of objection, the non-debtor party to each Assumed Executory Contract shall be deemed to have consented to such assignment under Bankruptcy Code § 365(c)(1)(B), and the Purchaser shall enjoy all of the rights and benefits under each such Assumed Executory Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

25.     The Purchaser has satisfied any and all requirements under Bankruptcy Code §§ 365(b)(1) and 365(f)(2) to provide adequate assurance of future performance under the Assumed Executory Contracts and the Purchaser shall not be required to post any bond, letter of credit, make any deposit or any similar arrangement nor have any other adequate assurance of future performance liability pursuant to Section 365(f)(2) of the Bankruptcy Code, except Purchaser's promise to perform following the Closing obligations under the Assumed Executory Contracts and Guarantor's guaranty of Purchaser's obligations. The Purchaser shall not be required to provide any further evidence of any adequate assurance to any counterparty of an Assumed Executory Contract.

26.     The Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Executory Contracts occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code § 365(k).

27. The non-debtor parties shall be prohibited from charging any rent acceleration, assignment fees, increases or other fees to Purchaser as a result of the assumption and assignment of the Assumed Executory Contracts.

*Rejected Contracts*

28. Subject to the Closing, the Rejected Contracts are hereby deemed rejected as of the Closing Date pursuant to section 365(a) of the Bankruptcy Code.

29. The Debtors reserve all rights to contest any alleged rejection damages claim and with respect to the characterization of the Rejected Contracts as executory or not, "true" contract or not, or otherwise. The Debtors do not waive any claims that they may have against the counterparties to the Rejected Contracts, whether or not such claims are related to the Rejected Contracts.

*Additional Provisions*

30. To the extent and when Debtors' liability to Purchaser under the Agreement becomes a non-contingent obligation to pay Purchaser, any liability of a Debtor to Purchaser under the Agreement shall, pursuant to section 364(c)(1) of the Bankruptcy Code, constitute a super-priority administrative expense in the Debtors' Chapter 11 Cases with priority over all administrative expenses of the kind specified in section 503(b) or 507(a) of the Bankruptcy Code. In addition, upon the consummation of any Acquisition Proposal (whether pursuant to a plan of reorganization or otherwise), the Expense Reimbursement and Breakup Fee shall be payable from the proceeds received by the Sellers prior to any distribution thereof to the Sellers' secured lenders.

31.   Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

32.   To the extent permitted by Bankruptcy Code § 525, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of this chapter 11 cases or the consummation of the transaction contemplated by the Agreement.

33.   The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Obligations and as otherwise set forth in the Agreement, and the Purchaser has not purchased any of the Excluded Assets.  Consequently, all persons, governmental units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Liens (other than Permitted Liens) based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Acquired Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens (other than Permitted Liens) or on account of any liabilities of the Debtors other than Assumed Obligations pursuant to the Agreement.  All persons holding or asserting any interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens or cause of action against the Purchaser or the Acquired Assets for any liability associated with the Excluded Assets.

34.   The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any

way be responsible for any liability or obligation of any of the Debtors and/or their estates

including, but not limited to, any bulk sales law, successor liability, liability or responsibility for

any claim against the Debtors or against an insider of the Debtors, or similar liability except as

otherwise expressly provided in the Agreement, and the Sale Motion contains sufficient notice of

such limitation in accordance with Local Rule 6004-1. Except to the extent the Purchaser

assumes the Assumed Obligations pursuant to the Agreement, neither the purchase of the

Acquired Assets by the Purchaser or its affiliates, nor the fact that the Purchaser or its affiliates

are using any of the Acquired Assets previously operated by the Debtors, will cause the

Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtors'

businesses within the meaning of (i) any foreign, federal, state or local revenue, pension, ERISA,

tax, labor, employment, antitrust, environmental or other law, rule or regulation (including,

without limitation, filing requirements under any such laws, rules or regulations) for purposes of

this provision, the term "affiliate" shall mean each entity that is treated as a single employer with

the Purchaser for purposes of Section 414 of the Code, (ii) under any products liability law, rule,

regulation or doctrine with respect to the Debtors' liability under such law, rule or regulation or

doctrine, or under any product warranty, recall or "lemon" liability law, rule, regulation or

doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (iii)

any employment or labor agreements, consulting agreements, severance arrangements, change-

in-control agreements or other similar agreement to which the Debtors are a party, (iv) any

pension, welfare, compensation or other employee benefit plans, agreements, practices and

programs, including, without limitation, any pension plan of the Debtors, (v) the cessation of the

Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (vi) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., (vii) any liabilities, debts or obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Acquired Assets prior to Closing, (ix) any liabilities, debts, commitments or obligations arising from laws, rules, regulations or administrative orders regarding the Debtors' relationships with vehicles dealers or distributors and (x) any litigation.

35.     To effectuate the transfer of the Monaco Marks under and in accordance with the Agreement, Debtors may file and cause their affiliates to file, without any other or further compliance with non-bankruptcy federal, state or local laws, all documentation necessary to change their respective corporate names so as to comply with the requirements of the Agreement

26

and to cause their affiliates to, remove from their respective assets, properties, stationery, literature and internet website any and all Monaco Marks.

36.     To effectuate the disposition of CCP and in accordance with the Agreement, ParentCo may consent to the following actions at CCP and may, and may cause its representatives on the board of managers of CCP to, support and take all actions reasonably necessary to complete the following as soon as reasonably practicable:  (1) the acquisition by Purchaser or one of its Affiliates and/or by one or more third parties approved by the board of managers of CCP of the machinery, equipment, tooling and other assets of CCP at a price equal to fair market value (as determined by the board of managers of CCP (and approved by the unitholders) or by an appraisal conducted by an independent appraisal or valuation firm selected by Purchaser) for cash or such other form of consideration as the board of managers of CCP may approve (and approved by the unitholders) and (2) following such acquisition, the orderly liquidation of CCP (including through a proceeding under Chapter 11 or Chapter 7, if requested by Purchaser).  The foregoing covenants shall be binding on the Parties and shall remain in full force and effect regardless of whether or not the Closing occurs or the Parties' other obligations under the Agreement are terminated.

37.     Except to the extent expressly included in the Assumed Obligations or to enforce the Agreement or Permitted Liens, pursuant to Bankruptcy Code §§ 105 and 363, all persons and entities, including, but not limited to, the Debtors, the Committee, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other

57527-002\DOCS_DE:148520.3

creditors asserting or holding a Lien of any kind or nature whatsoever against, in or with respect

to any of the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured,

matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or

out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the

operation of the Debtors' businesses prior to the Closing Date or the transfer of the Acquired

Assets to the Purchaser, shall be forever barred, estopped and permanently enjoined from

asserting, prosecuting or otherwise pursuing such Lien, whether by payment, setoff, or

otherwise, directly or indirectly, against the Purchaser or any affiliate, successor or assign thereof

and each of their respective current and former members, officers, directors, managed funds,

investment advisors, attorneys, employees, partners, affiliates, financial advisors and

representatives (each of the foregoing in its individual capacity), or the Acquired Assets. For the

avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or

permitted assigns from pursuing claims, if any, against the Purchaser and/or its successors and

assigns in accordance with the terms of the Agreement.

      38.    Subject to the terms of the Agreement, the Agreement and any related agreements

may be waived, modified, amended or supplemented by agreement of the Debtors and the

Purchaser, without further action or order of the Court; provided, however, that any such waiver,

modification, amendment or supplement is not material and substantially conforms to, and

effectuates, the Agreement and any related agreements.

      39.    The failure specifically to include any particular provisions of the Agreement or

any related agreements in this Order shall not diminish or impair the effectiveness of such

provision, it being the intent of the Court, the Debtors and the Purchaser that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

40.     To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

41.     This Order and Agreement shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets.

42.     The provisions of this Order are non-severable and mutually dependent.

43.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

44.     Subsequent to the Effective Date, the Debtors shall use the following caption with respect to the Debtors' Chapter 11 cases:

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) <br> ) Chapter 11 <br> ) <br> ) Case No. 09-10750-KJC <br> ) (Jointly Administered) <br> ) <br> ) |
| MCC (f.k.a MONACO COACH CORPORATION), et al.,[1] | |

45.    By written objection which must be received by Debtors and Purchaser and filed

with the Court on or prior to May 29, 2009, BofA may object ("Inventory Adjustment

Objection") to release of its liens with respect to a closing of the transactions described in the

Asset Purchase Agreement if the amount to be deducted from the Cash Portion pursuant to

Section 3.1(a)(i)(A) of the Asset Purchase Agreement (and as reflected in the Purchase Price

Calculation (as defined in the Asset Purchase Agreement) exceeds the sum of (a) $750,000,

deducted in the aggregate as to Section 3.1(a)(i)(A)(x), (y) and (z) of the Asset Purchase

Agreement, plus (b) up to an additional $4,244,000 deducted for 3.1(a)(i)(A)(x) of the Asset

Purchase Agreement.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  MCC (f.k.a. Monaco Coach Corporation) (0244); Signature Motorcoach Resorts, Inc. (8980); Naples Motorcoach Resort, Inc. (1411); Port of the Isles Motorcoach Resort, Inc. (8524); Outdoor Resorts of Las Vegas, Inc. (8478); Outdoor Resorts Motorcoach Country Club, Inc. (1141); Signature Resorts of Michigan, Inc. (4020); La Quinta Motorcoach Resorts, Inc. (9661); R-Vision Holdings L.L.C. (2820); R-Vision, Inc. (3151); R-Vision Motorized, LLC (1985); Bison Manufacturing, LLC (0778) and Roadmaster LLC (5174).  The address for each of the Debtors is 91320 Coburg Industrial Way, Coburg, OR  97408, with the exceptions of R-Vision, Inc., R-Vision Motorized, LLC, Bison Manufacturing, LLC and Roadmaster LLC, for which the address is 606 Nelson's Parkway, Wakarusa, IN  465733060; and La Quinta Motorcoach Resorts, Inc., for which the address is 80-501 Ave 48, Indio, CA 92201.

57527-002\DOCS_DE:148520.3

46. If an Inventory Adjustment Objection is timely filed and served, the Court shall conduct a hearing regarding the Inventory Adjustment Objection on June ___, 2009, at _10_:_00_ _p_.m. If the Inventory Adjustment Objection is sustained, the Agreement shall terminate and the Expense Reimbursement shall be payable prior to distributions to BofA. If the Inventory Adjustment Objection is overruled, BofA shall be deemed to have consented to the release of its liens with respect to a closing of the transactions described in the Asset Purchase Agreement.

47. Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Sale Motion or notice thereof shall be deemed to provide sufficient notice of the Debtors' request for waiver of the otherwise applicable stay of the order. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement. The Purchaser has acted in "good faith," and, in the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement the Purchaser shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

48. With respect to entities other than the Purchaser, nothing in this Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any such entity would be subject to as the owner or operator of property after the date of entry of this Order. With respect to the Purchaser, nothing in this Order or the Agreement releases, nullifies, precludes, or

31

enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that the Purchaser would be subject to as the owner or operator of the Acquired Assets after the date of entry of this Order. Nothing in this Paragraph shall limit any defenses or protections from liability for response costs at any of the Acquired Assets that the Purchaser may have under applicable non-bankruptcy law, including as an "innocent landowner" or "bona fide prospective purchaser" under Sections 101(35) or 107(r) of the "Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq.

49.    This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order, including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Acquired Assets and any Assumed Executory Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens.

Dated: May 22, 2009

The Honorable Kevin J. Carey
United States Bankruptcy Judge