## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 09-10750 (KJC) |
| MCC (f/k/a MONACO COACH | ) | |
| CORPORATION, *et al.*,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: July 23, 2009 at 2:00 p.m.** |
| | ) | **Objection Deadline: July 16, 2009 at 4:00 p.m.** |

**MOTION OF QUALITY ENTERPRISES USA, INC. TO COMPEL DEBTORS'
COUNSEL, PACHULSKI, STANG, ZIEHL & JONES LLP, TO RELEASE
FUNDS HELD IN ESCROW AND TO ENFORCE ORDER (I) AUTHORIZING
THE SALE OF CERTAIN ASSETS RE: MOTORHOME RESORTS AND LA
QUINTA, CALIFORNIA, REAL PROPERTY FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO
SECTIONS 363(A), (F) AND (M) OF THE BANKRUPTCY CODE; (II)
AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS;
AND (III) GRANTING RELATED RELIEF [D.I. NO. 290]**

Quality Enterprises USA, Inc. ("Quality Enterprises"), by and through

undersigned counsel, hereby submits this motion, pursuant to 11 U.S.C. § 105(a) seeking

entry of an order, *inter alia*, directing the Debtors' counsel, Pachulski, Stang, Ziehl &

Jones LLP, to release sale proceeds held in escrow to Quality Enterprises pursuant to the

Court's Order (I) Authorizing The Sale Of Certain Assets Re: Motorhome Resorts And

La Quinta, California, Real Property Free And Clear Of All Liens, Claims,

Encumbrances And Interests Pursuant To Sections 363(A), (F) And (M) Of The

Bankruptcy Code; (II) Authorizing The Assumption And Assignment Of Certain

---

[1] On information and belief, the Debtors are: Monaco Coach Corporation; Signature
Motorcoach Resorts, Inc.; Naples Motorcoach Resort, Inc.; Port of the Isles Motorcoach
Resort, Inc.; Outdoor Resorts of Las Vegas, Inc.; Outdoor Resorts Motorcoach Country
Club, Inc.; Signature Resorts of Michigan, Inc; La Quinta Motorcoach Resorts, Inc.; R-
Vision Holdings L.L.C.; R-Vision, Inc.; R-Vision, Inc.; R-Vision Motorized, LLC; Bison
Manufacturing, LLC and Roadmaster LLC.

Executory Contracts; And (III) Granting Related Relief [D.I. No. 290] (the "Sale Order"). In support of this motion, Quality Enterprises respectfully represents as follows:

## **Background and Relevant Facts**

1.      On or about December 12, 2007, Quality Enterprises and Naples Motorcoach Resort, Inc. ("NMRI"), one of the above-captioned Debtors, entered into a contract whereby Quality Enterprises agreed to complete certain site work at the Debtor's Naples Motorcoach Resort located in Naples, Florida (the "Naples Resort"). Including approved change orders, the total price for Quality Enterprises to complete site work at the Naples Resort is $4,568,394.16.

2.      On or about April 22, 2008, Quality Enterprises and NMRI entered into a second contract wherein Quality Enterprises agreed to construct certain buildings at the Naples Resort.    Including approved change orders, the total price for building construction at the Naples Resort is $3,121,325.63.

3.      Quality Enterprises began site work at the Naples Resort on or about April 7, 2008.  Quality Enterprises began construction on the building at the Naples Resort on or about June 9, 2008.  In accordance with Florida law, NMRI, as owner, recorded in the official records of Collier County, Florida, notices of commencement on May 16, 2008, August 22, 2008, and September 5, 2008 (the "Notices of Commencement").  Copies of the Notices of Commencement are collectively attached as Exhibit A.

4.      NMRI failed to make payments as they became due under their contracts with Quality Enterprises. As a result, Quality Enterprises stopped work, and filed two claims of lien (the "Claims of Lien") against the Naples Resort.  Copies of the Claims of Lien are collectively attached as Exhibit B.

2

5.　　On March 5, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware.

6.　　At the time of the filing of the petitions, NRMI was indebted to Quality Enterprises in the amount of $1,346,371.11 for the site work and $1,711,218.27 for the building work, for a total secured principal sum of $3,057,589.38. Additionally, NRMI is liable for interest, costs and attorneys' fees, in accordance with applicable Florida Statutes and laws.

7.　　On April 7, 2009, the Debtors filed Debtors' Motion for Order (A) Approving Sale Procedures In Connection With Sale of Certain Assets Re: Motorhome Resorts and La Quinta, California, Real Property; (B) Scheduling An Auction For and Hearing to Approve Sale; (C) Approving Notice of Respective Date, Time and Place For Auction and For Hearing On Approval of Sale(s); And (D) Granting Other Related Relief (the "Bid Procedures Motion")  [D.I. No. 118].

8.　　On April 15, 2009, Quality Enterprises filed and served its limited objection to the Bid Procedures Motion [D.I. No. 149]. A copy of the limited objection is attached hereto as Exhibit C. The limited objection contained background facts giving rise to Quality Enterprises' claim, and provided supporting documentation for its claim and lien.

9.　　On April 27, 2009, the Debtors filed the Debtors' Motion for Order (I) Authorizing The Sale Of Certain Assets Re: Motorhome Resorts And La Quinta, California, Real Property Free And Clear Of All Liens, Claims, Encumbrances And Interests Pursuant To Sections 363(A), (F) And (M) Of The Bankruptcy Code; (II)

Authorizing The Assumption And Assignment Of Certain Executory Contracts; And (III) Granting Related Relief (the "Sale Motion") [D.I. No. 192]. By the Sale Motion, the Debtors sought authority to sell the Naples Resort (as defined in the Sale Motion), among other assets, free and clear of all liens, claims and encumbrances provided that section 363(f) of the Bankruptcy Code has been satisfied.

10.    On May 4, 2009, Quality Enterprises filed and served its limited objection to the Sale Motion [D.I. No. 245]. A copy of the limited objection is attached hereto as Exhibit D. The limited objection again contained background facts giving rise to Quality Enterprises' claims and liens, and provided supporting documentation and back-up for its claims and liens.

11.    On May 8, 2009, the Debtors conducted an auction for the Naples Resort. At the auction, Quality Enterprises submitted a credit bid to the Debtors for an amount equal to its claims, which bid was overbid by the Successful Bidder.[2] The Successful Bidder ultimately agreed to purchase the Naples Resort for a purchase price of $8,520,283.02.

12.    On May 11, 2009, the Court entered an order approving the Sale Motion (the "Sale Order") [D.I. No. 290]. The Sale Order expressly provided that an amount of the sale proceeds attributable to the Naples Resort equal to the face amount of liens of Quality Enterprises, plus fees, costs and interest then accrued shall be placed in a trust account with Debtors' counsel, Pachulski, Stang, Ziehl & Jones LLP, for the benefit of

---

[2] As of April 30, 2009, Quality Enterprises' claim was an amount not less than $3,190,324.83. Quality Enterprises timely provided full back-up for claims and liens with its credit bid in accordance with the Order approving the Bid Procedures Motion on all parties required to receive notice of bids, including Ableco Finance LLC, Bank of America, and counsel for the Official Committee of Unsecured Creditors.

Quality Enterprises, subject to further proceedings or agreement regarding its disbursement. No party objected to this relief.

13.    Prior to Closing for the Naples Resort, Quality Enterprises again provided the Debtors and Ableco with a full accounting of, and back-up for its claims and liens. A copy of the transmittal to Debtors' counsel and Ableco's counsel is attached hereto as Exhibit E. Quality Enterprises also provided the Debtors and Ableco with a full accounting of, and back-up for the claims of its subcontractors, which claims are included in the claims and liens of Quality Enterprises. A copy of this transmittal is attached hereto as Exhibit F. Included with this documentation are verifications and releases for each of the subcontractors who provided goods or services to the Debtors. Debtors' counsel represented to counsel for Quality Enterprises that the Debtors intended to seek disbursement of proceeds upon motion by the Debtors to the Court, which motion would be filed shortly after the Closing.

14.    On June 19, 2009, the Debtors filed a motion to convert this case to a case proceeding under chapter 7 of the Bankruptcy Code [D.I. No. 418].

15.    On June 22, 2009, Ableco filed the Motion of Ableco Finance LLC for Entry of an Order Enforcing the Final Cash Collateral Order and Navistar Sale Order Pursuant to 11 U.S.C. § 105 [D.I. No. 426]. By its motion, Ableco seeks release of sale proceeds in accordance with its liens and claims against certain real property sold by the Debtors. On information and belief, Ableco has already been paid proceeds from the sale of the Naples Resort, notwithstanding the fact that Ableco's (and Bank of America's)

claims and liens against the Naples Resort are subordinate to the claims and liens of Quality Enterprises.[3]

### Relief Requested

16.    Quality Enterprises hereby seeks to enforce its claims and rights under the Sale Order, which expressly provides that its claims and liens and interests in the Naples Resort attached to the proceeds from the sale of the Naples Resort, and which further provides that proceeds from the sale of the Naples Resort shall be escrowed with Debtors' counsel, Pachulski, Stang, Ziehl & Jones LLP, pending disbursement to Quality Enterprises. Quality Enterprises respectfully requests that this Court enter an order in the form attached compelling Pachulski, Stang, Ziehl & Jones LLP (or such party who controls the trust account) to immediately release escrowed proceeds from the sale of the Naples Resort equal to the claims and liens of Quality Enterprises, plus fees, interest and expenses.

### Basis for Relief Requested

17.    As set forth herein, Quality Enterprises asserted claims and liens against the Naples Resort, evidenced by documents filed and recorded in Collier County, Florida. NMRI, as owner, recorded filed Notices of Commencement on May 16, 2008, August 22, 2008, and September 5, 2008, and Quality Enterprises subsequently recorded Claims of Lien on February 5, 2009. (*See* Exhibits A and B hereto.) Its liens are valid and

---

[3] Additionally, pursuant to the Final Order Re Second Motion To Use Cash Collateral (A) Authorizing Use of Cash Collateral; and (B) Granting Adequate Protection Pursuant to Bankruptcy Rule 4001(c) (the "Final Cash Collateral Order"), a Replacement Lien granted under the Final Cash Collateral Order is subject to any non-avoidable, valid, enforceable and perfected liens, security interests and rights that existed, or is deemed to exist, as of the Petition Date in favor of such third parties holding liens or security interests that are superior in priority to the pre-petition liens and security interests of the Secured Lenders. (*See* D.I. No. 241.)

perfected, and superior to the liens asserted by Ableco and Bank of America. (*See* mortgage recorded by Ableco on November 12, 2008, attached hereto as Exhibit G; *see also*, a title search for the Naples Resort, showing Ableco mortgage subordinate to the liens of Quality Enterprises is attached hereto as Exhibit H.)

18.    Section 713.07(2) of the Florida Statutes provides that liens arising under Section 713.05 shall attach to, and take priority <u>as of the time of recording of the Notice of Commencement</u>.    Sections 713.13(1)(f), (3) and (6) of the Florida Statutes further provide that a Notice of Commencement is effective upon the filing of the notice with the Clerk's office, and is valid for one year. The recording of a Notice of Commencement gives constructive notice that claims of lien may be recorded and may take priority as provided in Section 713.07 of the Florida Statutes.

13.    Additionally, and importantly, these liens are not avoidable by a trustee. *See In re Mass*, 69 B.R. 245, 247 (M.D. Fla. 1986) ("Under the laws of Florida, a mechanic's lien relates back to the date on which the work is commenced.    Since the commencement of the work is usually pre-petition, a post-petition recordation of the lien would relate back to a time pre-petition.    This lien would defeat or have priority over the rights of a Trustee or a Debtor who holds the status of a hypothetical lien created under Section 544, and therefore would be a permissible post-petition filing for purposes of perfecting the lien."); *see also, In re Continental Country Club,* 64 B.R. 177, 183 (M.D. Fla. 1986) ("The priority right given a mechanic's lien claimant under Florida Statutes §§ 713.05 and 713.07(2) who records a notice of commencement is that right which was intended by Congress in enacting § 546(b) to be exempt from the trustee's avoidance powers.").

14.     Section 105 of the Bankruptcy Code provides "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [and that] [n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). Pursuant to section 105(a), the Court has the power to enforce its previous orders and direct the Debtors to turn over sale proceeds to which Quality Enterprises is entitled. *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991); *In re Protarga, Inc.*, 329 B.R. 451, 479 (Bankr. D. Del. 2005). Furthermore, the Sale Order expressly provides that "[t]his Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Sale Procedures Order, and the Asset Purchase Agreement in all respects and to decide disputes concerning this Order and the Asset Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Asset Purchase Agreement and this Order...." (Sale Order p. 23.)

15.     On multiple occasions, Quality Enterprises publicly filed copies documents evidencing its claims and liens against the Naples Resort. No party has ever objected to the claims and liens of Quality Enterprises, nor does any party have reason to object to the claims and liens of Quality Enterprises. The claims and liens are valid, perfected and unavoidable.

16.     The Sale Order, which approved sale of the Debtors' assets, including the Naples Resort, expressly provides that all claims, liens, and interests in the Naples Resort

attached to the consideration received by the Debtors, and that all such claims, liens and interests would have the same priority as they had before the Closing. (*See* Sale Order, p 8.)    Further, Paragraph 34 of the Sale Order expressly provides that proceeds in the amount of the claims and liens of Quality Enterprises would be held in escrow in an account maintained by Debtors' counsel, Pachulski, Stang, Ziehl & Jones LLP, subject to further proceedings or agreement on their disbursement.  Quality Enterprises is not aware of any case or controversy regarding the validity, priority or extent of its claim or lien. All that remains is for the Court to authorize (or the parties agree to) disbursement of the proceeds held in the trust account maintained by Pachulski, Stang, Ziehl & Jones LLP.

17.    Quality Enterprises is being prejudiced by delay in the disbursement of proceeds by the Debtors' counsel. Its claim is significant and payment of the claim will provide much needed liquidity to Quality Enterprises.  On information and belief, Ableco has received proceeds from the sale of the Naples Resort, notwithstanding the fact that its liens (and the liens of Bank of America) in the Naples Resort are subordinate to the liens of Quality Enterprises.  (*See* mortgage recorded by Ableco on November 12, 2008, attached hereto as Exhibit G; *see also*, a title search for the Naples Resort, showing Ableco mortgage subordinate to the liens of Quality Enterprises is attached hereto as Exhibit H.)  Additionally, the Debtors are no longer own or operate the Naples Resort, and have no interest in the proceeds.

18.    On information and belief, the Successful Bidder is being prejudiced, as it has requested that Quality Enterprises provide its expertise and knowledge of work at the Naples Resort to complete the project, which Quality Enterprises has refused to provide absent payment of its claims.

19.     Additionally, <u>at the request of the Debtors and Ableco,</u> subcontractors timely provided verifications and releases expecting to be paid shortly after Closing. These subcontractors provided releases in consideration for, and the expectation of being timely paid.    Many subcontractors have threatened to file lawsuits against Quality Enterprises seeking payment.    Several have already filed actions.    (*See, e.g.* Exhibit I hereto).    If payment is not made soon, it is likely that the subcontractors will seek recovery against the Debtors too.    Conversely, there is no prejudice to the Debtors or the estate if Quality Enterprises is paid immediately.    Proceeds sufficient to cover the claims and liens of Quality Enterprises are held in trust by the Debtors' counsel, Pachulski, Stang, Ziehl & Jones LLP, not the estate.    Further, interest and attorneys fees due and owing on the claims of Quality Enterprises will continue to accrue unless and until its claim is paid full.    Interest is currently accruing at a daily rate of approximately $1,000. Attorneys fees continue to accrue.    There is, in fact, a benefit to the estate if the claim is paid immediately, as it will reduce ultimate liability and expense to the estate, as well as reduce the administrative cost of processing potential claims of subcontractors, who will likely file claims against the estate if not paid by Quality Enterprises.    These claims will otherwise be paid and satisfied by Quality Enterprises out of these proceeds.

## **Reservation of Rights**

20.     Quality Enterprises hereby reserves all rights arising from or related to the Sale Order and the sale of the Naples Property.

WHEREFORE, Quality Enterprises respectfully requests that this Honorable Court enter an order compelling Pachulski, Stang, Ziehl & Jones LLP to disburse funds held in escrow to Quality Enterprises, as set forth herein, and grant Quality Enterprises such other and further relief and protection as the Court deems appropriate.


Dated:  June 26, 2009          CROSS & SIMON, LLC
        Wilmington, Delaware

                        By: _____
                            Christopher P. Simon (No. 3697)
                            Michael J. Joyce (No. 4563)
                            913 N. Market Street, 11th Floor
                            P.O. Box 1380
                            Wilmington, DE  19899-1380
                            (302) 777-4200
                            (302) 777-4224 (Facsimile)
                            csimon@crosslaw.com
                            mjoyce@crosslaw.com

                            *Counsel for Quality Enterprises USA, Inc.*