**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------- x
| | | |
|---|---|---|
| **In re:** | : | Chapter 7 |
| | : | |
| **MCC CORPORATION (f/k/a MONACO COACH CORPORATION)** *et al.* | : | Case No. 09-10750 (KJC) |
| | : | |
| | : | Jointly Administered |
| **Debtors.** [1] | : | |
| | : | Hearing Date:  September 11, 2009 at 2:00 p.m. |
| | : | Objection Deadline: September 4, 2009 at 4:00 p.m. |

---------------------------------------------------------- x

**TRUSTEE'S MOTION FOR ORDER APPROVING SALE OF CERTAIN PROPERTY LOCATED IN WILDWOOD, FLORIDA, FREE AND CLEAR OF ALL LIENS, CLAIMS, RIGHTS, AND ENCUMBRANCES**

George L. Miller, the duly appointed Chapter 7 trustee (the "Trustee") for the estates of the above captioned Debtors) (the "Estates") hereby moves pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an Order authorizing and approving the sale of the Debtor's right, title, and interest in and to certain real estate and personal property located in Wildwood, Florida to Shapiro Real Estate Inc. (the "Buyer"). In support hereof, the Trustee respectfully states as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter concerns the administration of the bankruptcy estate and the use and sale of property and is, therefore, a core proceeding pursuant to 28 U.S.C. §

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, if applicable, are: Monaco Coach Corporation (0244); Signature Motorcoach Resorts, Inc. (8980); Naples Motorcoach Resort, Inc. (1411); Port of the Isles Motorcoach Resort, Inc. (8524); Outdoor Resorts of Las Vegas, Inc. (8478); Outdoor Resorts Motorcoach Country Club, Inc. (1141); Signature Resorts of Michigan, Inc. (4020); La Quinta Motorcoach Resorts, Inc. (9661); R-Vision Holdings L.L.C. (2820); R-Vision, Inc. (3151); R-Vision Motorized, LLC (1985); Bison Manufacturing, LLC (0778) and Roadmaster LLC (5174).

157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105 and 363 of the Bankruptcy Code.

## Background

2. On March 5, 2009 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. On June 29, 2009, the Court entered an order converting the case from one under chapter 11 to one under chapter 7. On or about June 30, 2009, the Office of the United States Trustee appointed George L. Miller to serve as the Interim Chapter 7 Trustee for the Debtor's estate.

3. The Debtor and its subsidiaries were producers of motorhomes and recreational vehicles in the United States. They were headquartered in Coburg, Oregon, operated manufacturing facilities in Oregon and Indiana, operated motor home resorts in California, Florida, Nevada, and Michigan, and owned undeveloped land in Riverside County, California.

4. Since his appointment, the Trustee has continued with the marketing the Debtor's assets. With respect to the Property (as defined below), a broker who the Debtor had retained prepetition, Grizzard Commercial Real Estate Group, Inc. (the "Broker"), has continued the marketing work.

5. The Broker has been actively marketing the Property (as defined below) since approximately February 9, 2009, and its efforts include:

  (a) listing the Property on a number of different electronic real estate networks and websites;

  (b) distributing brochures, in paper and/or electronic form, regarding the Property (as defined below) to all know prospective buyers nationally;

  (c) placing advertisements in publications such as *Florida Commercial Magazine*, *Florida Investor*, and various local newspapers;

(d) making information about the Property (as defined below) available to prospective purchasers through the Broker's involvement in trade organizations such as the Sumter County Economic Development Council and the Lake County Economic CDevelopment Council; and

(e) installing "for sale" signs around the property.

6. After several months of diligent marketing, the Buyer emerged as the leading candidate to purchase the Property (as defined below).

7. After arm's length negotiation, the Buyer and the Trustee executed an Agreement of Purchase and Sale (the "Sale Agreement"), under which the Buyer agreed to purchase the Property, as defined below, in exchange for payment of $3,010,000 (the "Sale"). A copy of the Sale Agreement is attached as Exhibit "A" to the this Motion.

8. The Property (as defined below) consists of both real and personal property. The Sale Agreement defines the real property as being the "Real Estate" owned by the Debtor and consisting of the following:

> [C]ertain real estate situated in the State of Florida, County of Sumter, and commonly known as Lots 12 and 14, in Business Park 44, 4605 Monaco Way, Wildwood, FL 34785.

Sale Agreement at p.1.

9. The Sale Agreement identifies the personal property being sold to the Buyer as being the items listed on Schedule 1.1 attached to the Sale Agreement which are:

i. All parts inventory located at the Real Estate as of the Execution Date;

ii. All tools and equipment located at the Real Estate as of the Execution Date;

iii. All computers, network equipment, and printers located at the Real Estate as of the Execution Date, including all originally installed or supplied software and drivers for said equipment.

    iv. The complete phone system, including any offsite software, hardware, or manuals for said system;

    v. Rights to use all existing incoming and outgoing phone numbers at the Real Estate;

    vi. All vehicles located at the Real Estate as of the Execution Date, including all golf carts and forklifts;

    vii. Rights to and cooperation in transferring all existing permits or licenses currently associated with the Real Estate;

    viii. Electronic copy of parts inventory, including pricing and vendor information;

    ix. Copies of all inspection reports, appraisals, and environmental studies;

    x. All furniture and fixtures owned by Debtor and located at the Real Estate as of the Execution Date.

Id. Collectively the Debtors' interest in the personal property identified on Schedule 1.1 of the Sale Agreement together with the Debtors' interest in the Real Estate is defined in this Motion and in the Sale Agreement as the "Property".

  10. The Buyer has stated that time is of the essence, requires that the Sale close as quickly as possible.

  11. The Sale Agreement provides that the Trustee will pay the Broker's commission out of the Sale proceeds to the Broker at closing in an amount equal to 4% of the purchase price (i.e. $120,400) (the "Broker's Commission").

  12. In the Trustee's judgment, the Sale price and terms are favorable to the Estate, and selling the Property pursuant to the Sale Agreement and paying the Broker's Commissions to the Broker are in the Estate's best interest.

**Summary of Relief Requested**

13. By this Motion, the Trustee respectfully requests an order pursuant to sections 105(a) and 363 of the Bankruptcy Code approving the Sale Agreement in its entirety, authorizing the Trustee to sell the Property to the Buyer under the Sale Agreement free and clear of all liens, claims, rights, and encumbrances, and granting related relief. In addition, the Trustee requests authority to pay the Broker's Commission of 4% of the Sale proceeds to the Broker at closing pursuant to the Sale Agreement.

**Relief Requested and Applicable Authority**

**A. The Trustee requests authority to sell the Property outside of the ordinary course of business**

14. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Courts have held that proposed sales of property pursuant to section 363(b) should be approved upon a finding that the decision to enter into the transaction represents a reasonable business judgment. See, e.g., In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying sale of assets); In re Phoenix Steel Corp., 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

15. Sales of property outside of the ordinary course of business may be by private sale, as opposed to public auction. See Bankruptcy Rule 6004(f)(1).

16.     The Trustee believes that the Sale of the Property to the Buyer represents a prudent and proper exercise of the Trustee's business judgment and is supported by concrete business reasons.

17.     The purchase price is reasonable, and the result of good faith, arm's length negotiation between the Trustee and the Buyer.

18.     The Trustee has reason to favor proceeding by way of private sale. The Buyer submitted an offer that appears superior to any other offer that the Trustee might reasonably be able to obtain. However, due to reasons related to its business, the Buyer is operating on a tight time frame, and has informed the Trustee that without assurance that the Sale will close in the very near future, the it will refuse to proceed. If the Trustee were to take the time to hold a full public auction, he would likely lose the Buyer. Under these circumstances, the Trustee believes that his best course of action is to propose a private sale to the Buyer subject to higher and better offers, and to provide notice of the Sale to parties in interest, including ones who may have previously expressed an interest in the Property.

19.     Further, the Trustee believes that the Broker's Commission contained in the Sale Agreement is fair. The Broker has worked diligently, and has procured a willing and qualified buyer who has made a good offer for the Property. In addition, the Sale Agreement allocates the majority of the costs associated with the Sale to the Buyer. The Broker's Commission appears to be one of the few costs that the estate, as opposed to the Buyer, would bear.

20.     In sum, the Trustee submits that selling the Property to the Buyer under the Sale Agreement is in the estate's best interest and is a sound exercise of his business judgment.

WILMINGTON\95629\3 260884.000
8/13/09

**B. The Trustee requests that the sale be free and clear of all liens, claims, rights, and encumbrances**

21. Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in a bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

22. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any one of the elements would permit sale of the Property free and clear of all liens, claims, rights, and encumbrances (collectively, "Interests"), See, e.g., Citicorp Homeowners Servs., Inc. v. Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988).

23. To the extent any holders of such Interests exist, the Trustee believes that, as to each and every entity or person having any such Interest in the Property, at least one of the five criteria set forth in section 363(f) of the Bankruptcy Code will apply.

24. Applicable caselaw provides that under section 363(f), a trustee may sell a debtor's assets free and clear of all Interests, with all Interests attaching to the net proceeds of the sale. See, e.g., Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV, 209 F.3d 252, 259 (3d Cir. 2000) ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of section 363(f) and, therefore, attaches

7

to the proceeds of the sale."); In re WPRV-TV, Inc., 143 B.R. 315, 321 (D.P.R. 1991); Citicorp Homeowners, 94 B.R. at 345.

25. To the extent that the Court determines that Interests exist that would not be extinguished as described above, the Trustee submits that holders of any such Interests should be deemed to have waived their rights if they fail to object to this Motion. See, e.g., Folger Adam, 209 F.3d at 265. As the United States Court of Appeals for the Third Circuit recognized, "Due Process requires 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Id. (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)).

26. Moreover, the Trustee expects that any Interest holders that may exist will consent or be deemed to have consented to the Sale, given that the Sale both acts to protect their interests by maximizing the value of the Property, and provides that all Interests will attach to the net proceeds of the Sale. The Trustee therefore anticipates that the Sale will satisfy the second element of section 363(f). See, e.g., Hargrave v. Township of Pemberton (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, secured creditor deemed to have consented under section 363(f)(2)); Pelican Homestead & Sav. Ass'n v. Wooten (In re Gabel), 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

27. Regardless of whether the Trustee obtains consent, however, section 363(f)(5) allows a trustee to sell property free and clear of liens when a legal or equitable proceeding exists that would force the lien holder to accept less then full money satisfaction for its interest. See, e.g., In re James, 203 B.R. 449, 453 (Bankr. W.D. Mo. 1997); WPRV-TV, Inc., 143 B.R. at 321.

8

28. Accordingly, the Trustee requests that the Court declare that the Property's transfer to the Buyer will be free and clear of all Interests to the fullest extent permitted under 11 U.S.C. section 363(f), with Interests attaching to the proceeds of the Sale.

29. The Trustee further requests that the Court enjoin any Interest holders that may exist from asserting such Interests against either the Property or the Buyer.

30. The purpose of an order purporting to authorize the transfer of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a buyer arising from the debtor's pre-sale conduct. In furtherance of section 363(f), buyers should receive assurance that transferred assets are not burdened with latent claims that will be asserted after the proposed transactions are completed.

31. Case law supports the issuance of injunctions under such circumstances:

> Courts have long recognized that inherent within the authority to sell property free and clear of liens is the power to enjoin such creditors from pursuing the purchase of such property. Nevertheless, more explicit protection is often needed to effectuate this important aspect of a § 363 sale. In other words, an actual injunction barring creditors from suing a Buyer of estate assets is sometimes necessary and appropriate to give the "free and clear" aspect of § 363(f) meaning. When this is the case, a court has the power to "issue an order . . . necessary or appropriate to carry out [§ 363(f), one of] the provisions of the [Bankruptcy Code]."

In re Dow Corning Corp., 198 B.R. 214, 245 (Bankr. E.D. Mich. 1996) (citing, inter alia, 11 U.S.C. § 105(a); Whitehead & Kales Co. v. Dempster (In re Wiltse Bros. Corp.), 361 F.2d 295, 299 (6th Cir. 1966)).

32. While bankruptcy courts generally recognize that: "[Section] 105(a) neither creates substantive rights nor permits the courts to contravene the Bankruptcy Code," it is equally clear that under certain circumstances "a permanent injunction is necessary to carry out

the effect of the 'free-and-clear' language [contained in a section 363 sale order]." WBQ P'ship v. Virginia Dep't of Med. Assistance Servs. (In re WBQ P'Ship), 189 B.R. 97, 110 (Bankr. E.D Va. 1995). See also In re P.K.R. Convalescent Centers, 189 B.R. 90 (Bankr. E.D. Va. 1995) (enjoining a creditor from suing the asset Buyer prior to the approval of the sale); In re Parks Indus. Corp., 132 B R. 504 (D. Me. 1991) (free and clear sale enabled bankruptcy court to enjoin product liability claims as asserted against Buyer).

33. Accordingly, the Trustee requests that the Property be transferred to the Buyer free and clear of all Interests, with any such Interests attaching to proceeds of the sale, and that any Interest holder that may exist be enjoined from asserting such Interests against the Property or Buyer.

### C. The Trustee requests that the Buyer be entitled to the protections of section 363(m)

34. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) and (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

35. Mindful of this statutory provision, the United States Court of Appeals for the Third Circuit has directed that when a bankruptcy court authorizes a sale of assets pursuant to section 363(b), it is required to make a finding with respect to the "good faith" of the Buyer. See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 150 (3d Cir. 1986). The Court of Appeals defined "good faith" under section 363(m) as "encompass[ing] one who purchases in 'good faith' and for 'value'". Id. at 147.

10

36. The Sale Agreement is the result of arm's length negotiations between the Trustee and the Buyer, and is not in any way tainted by fraud, collusion, or bad faith. Accordingly, the Trustee submits that providing the Buyer with the "good faith" protections of section 363(m) is warranted.

**D.     The Trustee requests that his proposed notice be deemed adequate**

37. Under Bankruptcy Rule 2002(a) and (c), the Trustee is required to notify creditors of the terms and conditions of the Sale and the objection deadline. The Trustee respectfully submits that this Motion, which contains the type of information required under Bankruptcy Rule 2002(c), will enable interested parties to participate in the sale hearing if they so choose.

38. The Trustee shall promptly serve a copy of the Motion, including all attachments, by first-class United States mail, upon: (a) the Office of the United States Trustee, (b) counsel for the Debtor, (c) the Buyer, (d) any parties known to the Trustee to have expressed an interest in purchasing the Property, (e) the Debtor's twenty largest unsecured creditors as identified in the Bankruptcy Schedules, (f) any creditors identified as secured in the title report(s) and UCC searches for the Property, (g) local taxing authorities for the State of Florida and County of Sumter, and (h) all parties in interest who requested notice pursuant to Bankruptcy Rule 2002.

39. The Trustee submits that this notice constitutes good and adequate notice of the Sale and related proceedings (including, but not limited to, the sale hearing). Therefore, the Trustee respectfully requests that this Court approve the foregoing notice procedures.

**E.     The Trustee Requests that the 10 day stay of Rule 6004(h) not apply**

40. Because time is of the essence in closing the Sale, the Trustee and the Buyer intend to consummate the Sale by closing as quickly as possible. Accordingly, the Trustee

11
WILMINGTON\95629\3 260884.000
8/13/09

respectfully requests that the Court order that Rule 6004(h)'s stay shall not apply to any order approving the Sale, and that such order shall be effective and enforceable immediately upon entry. Therefore, any party objecting to the Sale would have to exercise diligence in filing an appeal and pursuing a stay, or else risk their appeal being foreclosed or rendered moot.

### No Prior Request

41. No prior request for the relief sought herein has been requested from this Court or any other court.

### Notice

42. Notice of this Motion has been provided in accordance with the notice procedures set forth above.

43. This Motion presents no novel issues of law and accordingly the Trustee, if applicable, respectfully requests that this Court waive the requirements of Local District Court Rule 7.1.2.(a), as incorporated into the Local Rules of the United States Bankruptcy Court for the District of Delaware via Rule 1001-1(b), providing for the filing of an opening brief and that the legal argument contained in this Motion be considered in lieu of an opening brief. The Trustee reserves the right to file a Reply Brief.

WILMINGTON\95629\3 260884.000
8/13/09

WHEREFORE, the Trustee respectfully requests that the Court grant the relief requested in this Motion and grant the Trustee such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: August 13, 2009

COZEN O'CONNOR

By: /s/ John T. Carroll, III
John T. Carroll, III (DE No. 4060)
1201 North Market Street
Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2028
Facsimile: (302) 295-2013

Counsel to the Chapter 7 Trustee,
George L. Miller

13
WILMINGTON\95629\3 260884.000
8/13/09